## 18056.   UNITED STATES FIDELITY AND GUARANTY
## COMPANY *et al. v.* STAPLETON *et al.*

1. Where a construction company, having a contract to build a public road
   or highway, obtained from another the use of his truck and the services
   of one whom he had employed to drive it, and put them at work in the
   hauling of materials for the construction of the highway, and where

Workmen's Compensation Acts, .. C. J. p. 46, n. 31; p. 115, n. 37.

the driver, while so engaged, was subject to the direction and control of the construction company and was liable to be discharged by this company from the particular work for disobedience to orders or for misconduct, he was, while in the course of such employment, an employee of the construction company within the meaning of the workmen's compensation act.

2. In such a case, where the special employer (here the construction company) paid a sum to the original employer for the hire of the employee, and where, under all the facts, there was a sufficient basis, in wages, by which to assess the amount of compensation to be awarded, and where the company's liability for compensation was otherwise established, it will not be relieved merely because it may neither have paid, nor have been liable to pay, wages directly to the employee.

3. The driver of the truck having been killed in the course of his employment and because thereof, by the overturning of the vehicle while he was hauling the materials, the industrial commission was authorized, under these and the other facts appearing, to award compensation as against the construction company.

DECIDED JANUARY 17, 1928. REHEARING DENIED FEBRUARY 18, 1928.

Appeal; from Richmond superior court—Judge A. L. Franklin. March 4, 1927.

Application for certiorari was made to the Supreme Court.

*Bryan & Middlebrooks,* for plaintiffs in error.

*Peebles & Bowden,* contra.

BELL, J. This case arose under the workmen's compensation act, on the claim of Mr. and Mrs. W. A. Stapleton, for compensation for the death of their son, John Stapleton, directed against Lawrence-Claussen Construction Company, alleged employer, and the United States Fidelity & Guaranty Company, insurer. From an award in favor of the claimants the opposite parties appealed to the superior court, and, the appeal being denied, they excepted. The decedent was killed on July 12, 1926, in the course of his employment and because thereof, by the overturning of a motor-truck which he was driving. The contentions of the plaintiffs in error are that the decedent was not an employee of the construction company, but was the servant of another as independent contractor, and also that the award was illegal because this company was not paying to the decedent wages and was not liable for the payment of the same to him. The questions for decision therefore are: 1. Was the decedent an employee of the construction company within the meaning of the compensation act? 2. Is the payment, or liability for the payment, of wages to the alleged employee by the person sought to be held an absolute prerequisite to an award of compensation against him?

The following is a resume of the evidence adduced before the industrial commission, and of facts which were either established without dispute or which could have been inferred: The construction company had a contract for the construction of a section of a highway, extending from Dean's Bridge to Patterson's Bridge in Richmond county, Georgia. The cement and sand employed and used in the construction of the highway were hauled from Blythe, Georgia, to the point on the highway where the mixer was located. The construction company owned and operated several trucks and hired other trucks for the purpose of hauling the materials. One R. F. Jones, who owned a Ford truck, engaged young Stapleton, the decedent, to drive the same, and thereupon entered into a contract with the construction company to haul the materials from Blythe to the highway mixer at 25 cents per load for the first mile and 10 cents for each additional half mile traveled. The contract was not for any specified time. The truck and driver were both placed at the command of the construction company, although the expense of operating the truck and of keeping it in repair was borne by Jones. He testified that he had nothing to do with the operation of the truck, but that he turned it over to Henney, the foreman of the construction company, and that Stapleton, the driver, was to get his orders and instructions from Henney and to do what Henney told him. This evidence was corroborated by that of Mr. Claussen, a representative of the construction company, who testified that the orders given to Stapleton were the same as those given to the drivers of the company's trucks; that the trucks were driven under loading bins and loaded with the correct amount, and that the loads were then hauled and dumped into the mixer, and that in so doing the drivers were subject to the orders of the company's foreman. It is further evident, from Mr. Claussen's testimony, that although he could not discharge Stapleton as the driver of Jones's truck, yet he could discharge him from the particular employment. Stapleton was paid by Jones the same wages that the construction company paid to the drivers whom it employed directly, but received no wages immediately from the construction company. The industrial commission found that he was under the control and direction of this company, and that he was its employee within the meaning of the compensation act, and awarded compensation accordingly.

So far as material to this case, section 2 (b) of the compensation act provides :· " 'Employee' shall include every person, including a minor, in the service of another under any contract of hire or apprenticeship, written or implied." Under general legal principles, it is well settled that the fact that an employee is the general servant of one employer does not prevent him from becoming the particular servant of another under special circumstances, and it is true, as a general proposition, that when one person lends or hires his servant to another for a particular employment, the servant, as to anything done in such employment, must be dealt with as the servant of the person to whom he is lent or hired, although he remains the general servant of the other person. In actions at common law, to recover damages alleged to have been caused by the servant of the defendant, the criterion by which to determine whether the relation existed as alleged is to ascertain whether, at the time of the injury, the alleged servant was subject to the defendant's orders and control and was liable to· be discharged by him for disobedience to orders or for misconduct. *Brown* v. *Smith*, 86 *Ga.* 274 (12 S. E. 411, 22 Am. St. R. 456) ; *Reaves* v. *Columbus Power Co.*, 32 *Ga. App.* 140, 148 (122 S. E. 824) ; *Quinan* v. *Standard Fuel Co.*, 25 *Ga. App.* 47 (102 S. E. 543) ; *Greenberg & Bond Co.* v. *Yarbrough*, 26 *Ga. App.* 544 (106 S. E. 624). The same rules have been held to be applicable in determining the existence or non-existence of the relation of employer and employee in cases arising under compensation acts. *U. S. Fidelity &c. Co.* v. *Corbett*, 31 *Ga. App.* 7 (119 S. E. 921) ; *Zurich &c. Ins. Co.* v. *Lee*, 36 *Ga. App.* 248 (136 S. E. 173).

In Scribner's case, 231 Mass. 132 (120 N. E. 350, 3 A. L. R. 1178), the court held that a driver who, with his team, was let by an ice company to a coal company for the delivery of coal, and who was subject to the orders of the coal company, should, in case of injury while in the yards of the coal company, look to it for compensation under the workmen's compensation act, although he received his wages from the ice company and remained in the general employment of that company, which relied on him to look after its team. In that case the court said that the "well-established principle of the common law which holds that an employee who is lent to a special employer as distinguished from

his general employer, and who assents to the change of employment, becomes the servant of the employer to whom he is lent, applies as well to cases arising under the workmen's compensation act as to those at common law."

In Dale *v.* Saunders, 218 N. Y. 59 (112 N. E. 571, Ann. Cas. 1918B, 703), the New York Court of Appeals said that "Where an employer hires the services of his team and employee to another to haul sand, the employee is still working for the original employer when he is loading sand in a pit for the purpose of hauling it, and therefore is entitled to compensation from the employer;" but in view of the later decision by the same court in De Noyer *v.* Cavanaugh, 221 N. Y. 273 (116 N. E. 992), it would seem that the ruling just quoted should not be taken as excluding the right to compensation from the special employer where the employee was subject to his orders and control, within the rule above referred to. In the DeNoyer case the court said: "Even where no property of the general employer is intrusted to the employee to be used in the special employment, the general employer pays the compensation, may direct the employee when to go to work, and may discharge him for refusal to do the work of the special employer. The industrial commission, therefore, has full power to make an award against the general employer. It does not follow that by the application of this rule the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between himself and both of them. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. Comerford's case, 224 Mass. 571, 573 (113 N. E. 460). Thus, at one and the same time they are generally the employees of the general employer and specially the employees of the special employer. As they may, under the common law of master and servant, look to the former for their wages and to the latter for damages for negligent injuries, so under the workmen's compensation law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards [citations], and the industrial commission may make such an award as the facts in the particular case may justify."

In Employers Liability Assurance Corp. *v.* Ind. Acc. Com., 179 Cal. 432 (177 Pac. 273), the court said: "While we have here-tofore held that an independent contractor is not entitled to compensation under the workmen's compensation law, we find nothing in our decisions which would prevent our following the rule announced by the Court of Appeals of New York in the case of DeNoyer *v.* Cavanaugh, supra, and recognizing the fact that in some cases, where, at the time of the accident, both the general and the special employer exerted some measure of control over the injured person through their respective foremen or employees, both should be held liable." The California court in Famous Players' Lasky Corp. *v.* Ind. Acc. Com., 228 Pac. 5 (34 American L. R. 765), again had before it the question of the liability of a special employer, and in that case held that a pilot of an airplane who was hired with the plane for a day to a motion-picture producer, from whom he took all orders as to flight for the making of a picture, was entitled to look to both employers for compensation for an injury arising out of and in the course of his employment in making the flight. In that case the motion-picture producer paid nothing as wages directly to the injured employee, who received his wages solely from his general employer.

In *Ga. Ry. & Power Co.* v. *Middlebrooks, 34 Ga. App.* 156 (128 S. E. 777), this court held that "Payment of wages, although not necessary to render one a master, is necessary to bring one within the workmen's compensation act, which contemplates that compensation shall be fixed in proportion to the employee's wages as applied to the particular injury"; and in the opinion it was said that "there must be a contract of hiring and a provision for payment for services of the employee by the employer." But in that case the defendant railway company, which sought to establish the relation of master and servant between it and the plaintiff, and thus to relegate the plaintiff to a claim under the workmen's compensation act, had paid nothing as wages or hire for the plaintiff's services, either to the plaintiff or to the company from which the plaintiff's services were obtained, and appears to have had no contract with either for the payment of the same. In the present case, while Stapleton, the employee, was originally hired by Jones, from whom he received the reward of his labor, Jones was in turn paid by the construction company. So that this case is to be dis-

tinguished from the *Middlebrooks* case in that the party here sought to be held liable did pay, or was under a contract to pay, a consideration for the services of the employee, and, according to the finding of the industrial commission, the amount of such payment was "based upon and corresponded with the wages paid by the construction company to the drivers of its trucks,"—a finding which we think was authorized by the evidence. As was said by the commission, "Stapleton was actually 'in the service' of the construction company; his contract of hire was made in contemplation of this service, and after an understanding between Jones and the construction company and Jones and Stapleton that he was hired for the particular purpose of serving the construction company. Under the facts in this case, is it not a reasonable conclusion that there was an implied contract of hire between the construction company and Stapleton?" We think there was such a contract, and while the statute contemplates that compensation shall ordinarily be fixed in proportion to the employee's wages or to the diminution of his earning capacity, we are of the opinion that the wages element was not lacking in this case. In the *Middlebrooks* case there was no payment of wages whatever by the defendant for the services of the employee, and therefore we cannot construe the decision in that case as holding that the payment of wages *directly to the employee* by the party alleged to be liable is a prerequisite to an award of compensation against him. While, in the case now under consideration, the construction company neither paid nor was liable to pay wages directly to Stapleton, he received wages and the company paid wages for the particular work which he was doing. Jones was a middleman, and the company, through Jones, indirectly paid wages to Stapleton. Although the company paid Jones a gross sum for the hire of the truck and the driver, the wages which Jones paid to Stapleton were the same as were paid by the company to its other drivers, and the industrial commission was authorized to find either that this was the reasonable value of Stapleton's services or that it was the amount actually allowed therefor by the company in the aggregate sum paid by it for the hire of both truck and driver. So, although in a case of this sort wages are necessary as a standard by which to assess the amount of compensation to be awarded, it is unnecessary to determine in the instant case whether the amount

should have been fixed in proportion to the wages actually received by Stapleton from Jones, or according to the reasonable value of his services, or on the basis of the amount which the company was paying therefor. Under the peculiar facts of this case, the result could have been the same under either method, and it does not appear in the record which method the industrial commission used. Furthermore, there is no contention that the award is incorrect as to amount. It would seem that where the special employer has knowledge of the terms of the contract of hiring between the employee and his original employer, that contract, for the purpose of determining the amount of compensation, should be deemed to have been adopted by the special employer; but, as just stated, it is unnecessary to decide this question or to pass at all upon the question of what would be the proper method of determining the amount of the wages to be considered in arriving at the amount of compensation in a case of this sort. In Tarr *v.* Hecla Coal Co., 265 Pa. 519 (109 Atl. 224), it was said that the fact that the employee's "wages had not been fixed is immaterial, as the law will imply a reasonable compensation."

In addition to the cases already cited, others may be mentioned in which compensation was awarded as against the special employer irrespective of the fact that he may not have paid wages directly to the employee. In Cayll *v.* Waukesha Gas Co., 172 Wis. 554 (179 N. W. 771), the court said: "Where an excavation contractor's employee consented to be transferred to the service of a gas company laying pipe in the ditches dug by the contractor, and was injured while working for the gas company and under its sole control, the gas company, and not the contractor, was liable for compensation, he being an 'employee' of the gas company under an implied contract of employment within the common law rule." In that case the gas company paid Cayll, the general employer, for the time spent on its work, and Cayll carried Massino, the injured employee, on his payroll as theretofore. The industrial commission thought the gas company was under a moral obligation to indemnify Massino, but on legal grounds felt bound to hold that the indemnity should be paid by Cayll. The trial court held that both legally and morally the obligation rested upon the gas company, and in this view the appellate court concurred, holding that, "While there was no express contract be-

tween Massino and the gas company, there was, within the meaning of the act, an implied contract." See further, in this connection, Pruitt v. Ind. Acc. Com., 189 Cal. 459 (209 Pac. 31); Davis v. Industrial Com., 297 Ill. 29 (130 N. E. 333); Chisholm's case, 238 Mass. 412 (131 N. E. 161); Milwaukee v. Fera, 170 Wis. 348 (174 N. W. 926); Hogan's case, 236 Mass. 241 (127 N. E. 892); Schweitzer v. Thompson &c. Co., 229 N. Y. 97 (127 N. E. 904); Arnett v. Hayes Wheel Co., 201 Mich. 67 (166 N. W. 957).

As suggested by the industrial commission, the primary object of the compensation act is to shift the burden of economic waste entailed by personal injuries in industrial operations to the industry, to be eventually borne by the consumer as a part of the necessary cost of production. The death of Stapleton resulted from the industry in which he was engaged, to wit, the highway construction work. He was running the truck for the purpose of hauling material necessary in the construction of the highway at the time of the fatal injury. It is conceivable that a different result would have been reached had his death been caused by some act in connection with the care of the truck, which was a part of his general employment and over which the construction company had no power of control. To hold that an employee injured while under the control and direction of a special employer can not recover compensation against the special employer would unjustly deprive the injured employee or his dependents of the very benefits which the act was intended to give. One of the purposes of the law is to guard against the negligence of persons intrusted with superintendence and authority in the operation of machinery. In great enterprises there are many instances where workmen are supplied indirectly, as the plaintiff was here. "To hold that all such persons are outside the pale of the compensation act would be to open an avenue for the complete subversion of the act. By having their laborers employed and paid by a third party, and sent to them through such third party, employers could thus escape all liability." See Miller v. N. Hudson Co., 152 N. Y. Supp. 22.

It follows from what has been said that the award in this case was authorized, and that the superior court properly denied the appeal of the construction company and its insurer. This conclusion has been reached by us independently of section 20 of the compensation act. While the provisions of that section do not

appear to be applicable in a case like the present, they do illustrate the proposition that liability to pay wages directly to the employee is not in every case essential to liability for compensation.

We do not mean to hold that the claimant in the present case might have had an election as to whether they would proceed against either the construction company or Jones, or both, had the latter been subject to the workmen's compensation act. While we have cited cases from other jurisdictions to the effect that a claimant, under certain states of facts, would be entitled to such election, in the present case it is necessary to rule only as to the liability of the construction company. Compare the Scribner and Pruitt cases, supra.

We have carefully examined all the cases cited by counsel for the plaintiffs in error and are of the opinion that they are inapplicable in the solution of the questions presented by the instant record.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*