(No. 5389.   April 3, 1930.)

RALPH MODLIN, Claimant and Respondent, v. TWIN FALLS CANAL COMPANY and CLEAR LAKES SYNDICATE, Employers and Respondents, and MARYLAND CASUALTY COMPANY, Surety and Respondent, and STATE INSURANCE FUND, Surety and Appellant.

[286 Pac. 612.]

Walters, Parry & Thoman, J. R. Keenan and Scatter-
day & Stone, for Appellant.

Charles M. Kahn, for Respondents Clear Lakes Syndi-
cate and Maryland Casualty Company.

Bothwell & Chapman, for Respondent Twin Falls Canal Company, and Charles A. North, for Respondent Ralph Modlin, file no brief.

LEE, J.—Ralph Modlin, claimant and respondent, was by the Industrial Accident Board awarded compensation against respondent, Twin Falls Canal Company, and its surety, State Insurance Fund, appellant. The State Insurance Fund having appealed, the district court found that the board's findings of fact and conclusions of law were true and correct, and affirmed the award. From the judgment entered, the State Insurance Fund again appealed.

The errors assigned may be reduced to two main contentions, viz.: that, when injured, claimant was a special employee of respondent, Clear Lakes Syndicate, and not the employee of respondent, Twin Falls Company, and that, if he was an employee of the Twin Falls Canal Company, the work he was engaged in was *ultra vires* and not covered by the policy with the State Insurance Fund.

Upon sufficient evidence determined by the board, the court found that respondent Clear Lakes Syndicate, being engaged in the construction of a dam and spillway, had made arrangements with the Twin Falls Canal Company, "to rent from the latter certain rock drilling machinery consisting, among other things, of an air compressor, jack-hammer and drills, together with the services of two men to operate the same, agreeing to pay for the use of the said machinery $2.00 an hour while it was in use, and to reimburse the defendant, Twin Falls Canal Company, for the wages it paid to the men operating the machinery"; that the claimant, Ralph Modlin, and George Wilcox, on the day of the injury, "were the employees of the Canal Company, and were operating the compressor, jack-hammer

and drills for the said Canal Company; that the said employees were paid by the Canal Company and were not subject to discharge by the Clear Lakes Syndicate; that the Canal Company furnished a camp wagon for said Modlin and Wilcox in which they lived separate and apart from the employees of said Clear Lakes Syndicate.'' There was a further finding that the Canal Company had for some years been accustomed to do rock drilling, blasting, well drilling and road making for other people and corporations, and that, whenever it utilized the particular machinery that had been rented to the Clear Lakes Syndicate, it employed claimant, Modlin, either to run the jack-hammer or do the ''powder work,'' and that, when the rental agreement with the Clear Lakes Syndicate was entered into, the manager of the Canal Company instructed its foreman, George Wilcox, to hunt up and engage Modlin to operate the jack-hammer on the work that was to be done for the Clear Lakes Syndicate. Upon these facts, the board and the court concluded as a matter of law that the claimant sustained a personal injury by accident arising out of and in the course of his employment with the Canal Company, and was entitled to an award against said company and its surety, State Insurance Fund.

An examination of the record supporting the findings shows that the Clear Lakes Syndicate exercised no supervision whatever over the work of the crew furnished by respondent Canal Company. The former's foreman merely pointed out where the projected work was to be done; and the crew, under Wilcox's orders, proceeded to its accomplishment. The Canal Company paid its men by voucher, and billed the Clear Lakes Syndicate for such disbursement together with the rental charge for the machinery aforesaid. Its position was virtually that of an independent contractor, irrespective of whether it was making a profit or not. There was no such direction or control of claimant by the Clear Lakes Syndicate as could have constituted him even its special employee: he was at all times subject to

the call of the Canal Company, the same as a guardsman after accepting the Queen's shilling.

Practically the same situation has been discussed by the courts many times heretofore, notably by the California court in *Stewart v. California Imp. Co.*, 131 Cal. 125, 63 Pac. 177, 724, 52 L. R. A. 205, *Teller v. Bay & River Dredging Co.*, 151 Cal. 209, 12 Ann. Cas. 779, 90 Pac. 942, 12 L. R. A., N. S., 267, *Billig v. Southern Pac. Co.*, 189 Cal. 477, 209 Pac. 241, and by the Federal supreme court in *Standard Oil Co. v. Anderson*, 212 U. S. 215, 29 Sup. Ct. 252, 255, 53 L. ed. 480. In *Teller v. Bay & River Dredging Co., supra,* the dredging company rented a ditcher and crew to private parties for a consideration of $70 per day. The private parties, aside from designating the character and location of the work to be done, as was the case here, had nothing else to do with the operation. It was held that the crew were employees of the dredging company. In *Standard Oil Co. v. Anderson, supra,* the company had contracted with a stevedore to load one of its ships. A steam winch and drum belonging to the company, together with an operating winchman were furnished by the company, the stevedore agreeing to pay the company so much per thousand for the hoisting. Holding that the winchman was the employee of the company and not of the stevedore, the court said:

"For reasons satisfactory to it, the defendant preferred to do the work of hoisting itself, and received an agreed compensation for it; the power, the winch, the drum and the winch-man were its own. It did not furnish them, but furnished the work it did for the stevedore. That work was done by the defendant, for a price, as its own work by and through its own instrumentalities and servants, and under its own control."

To the same effect is *Driscoll v. Towle*, 181 Mass. 416, 63 N. E. 922. Appellant, in support of its contention that Modlin was the employee of the Clear Lakes Syndicate, cites primarily: *Pruitt v. Industrial Acc. Com.*, 189 Cal. 459, 209 Pac. 31, *Oklahoma Gen. Power Co. v. State Industrial*

*Com.,* 108 Okl. 251, 235 Pac. 1095, and *United States Fidelity & G. Co. v. Stapleton,* 37 Ga. App. 707, 141 S. E. 506. In each of these cases, the employee was in some instance subject to the immediate supervision and direction of the employer held liable.

It must be noted that all of the cases cited by respondents are purely master and servant cases, definitive of the terms "employer" and "employee," as they were understood at common law. The Georgia case cited by appellant announced the general rule that in order to determine whether or not the relation of master and servant existed at the time of the injury, the criterion "is to ascertain whether, at the time of the injury, the alleged servant was subject to defendant's orders and control and was liable to be discharged by him for disobedience to orders or misconduct." And such was the law in this jurisdiction until the legislature saw fit to extend and enlarge the definition theretofore prevalent. C. S., sec. 6320, defining the word "employer," specifically declares:

"It includes the owner or lessee of premises, or person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed."

The intent of the legislature to make responsible the employment in which the workman, no matter how he comes, is injured is altogether patent. Under this statute, the Clear Lakes Syndicate together with its surety would have been pinned to liability forthwith had not the succeeding Session of 1921 modified it by the following amendment:

"An employer subject to the provisions of this Act, shall be liable for compensation to an employee of a contractor or sub-contractor under him or who has not complied with the provisions of Section 6278 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or sub-contractor shall also be liable for such compensation, but the employee shall not recover com-

pensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or sub-contractor for whom the employee was working at the time of the accident.''

While holding the employer liable, this language gives him such a recourse against the contractor as makes the latter in effect primarily responsible. He had just as well pay first as last. Whether or not claimant's employer, the Canal Company, was operating *ultra vires* is immaterial. The fact remains that claimant was working, and working for the Canal Company. He was doing what his immediate employer directed him to do; and therefore covered by appellant's contract of insurance. (C. S., sec. 6278.)

Appellant contends that its policy covered only such employees as were to be engaged in the company's regular business. The terms of the policy provided that it should ''cover the entire liability of the employer to his employees covered by the contract.'' What employees were covered by the contract? Obviously, those mentioned in C. S., sec. 6278, *supra,* which imposes upon employers the duty to secure compensation to ''their employees,'' without any reservation as to any particular class or type of employee.

That it is the purpose of the Workmen's Compensation Act to protect the workman, irrespective of where his employer may choose to put him, is clearly indicated by C. S., sec. 6280, which mandatorily requires the employer to post and maintain in a conspicuous place in and about his place of business typewritten or printed notices in forms prescribed by the board, stating the fact that he has complied with the law as to securing the payment of compensation to his employees in accordance with the act. Here, the commonwealth, having declared that all employees shall be protected, directly announces to such employees through its creature, the Industrial Accident Board: ''I have ordered your employer to secure you against accident in the course of your employment; and he has done so. You are,

therefore, certain of protection." These provisions of the Compensation Act were part and parcel of appellant's contract, by it consciously undertaken at the time. It cannot thereafter be heard to say: "Because your employer set you to work *ultra vires*, I am not bound, and you can go through life, mutilated and scarred, for all of me."

The late Chief Justice Wm. A. Lee foreshadowed this very discussion in *Hauter v. Coeur d'Alene etc. Min. Co.*, 39 Ida. 621, 228 Pac. 259, where he held that the respondent insurer had "entered into a contract of liability instead of a contract of surety, and thereby assumed direct liability to *each* employee of the insured. (Italics ours.)" Furthermore, appellant had specifically contracted that it should "in all things be bound by and subject to the orders, findings, decisions or awards rendered against the employer for the payment of compensation under the act." An award has been rendered against the employer, which in the absence of an appeal by it has become final, the employer evidently accepting such an award as reasonable and just. On this point, exit appellant.

It is urged that respondent Canal Company was not in this particular enterprise for pecuniary gain. Whether it made a profit or not is beside the issue. It was supplying service and receiving remuneration for it. If it made no profit, it but shared the fortune of any other contractor who has finished a job, out in pocket or barely even.

Judgment affirmed. Costs to respondent.

Givens, C. J., and Varian and McNaughton, JJ., concur.