CHARLES M. GATES'S (dependents') CASE.

Suffolk.   March 2, 1937. — April 1, 1937.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Workmen's Compensation Act*, To whom act applies.   *Municipal Corporations*, Officers and agents.   *Agency*, What constitutes.

Evidence in proceedings under the workmen's compensation act, that a worker on a town cemetery project, although selected by an administrator for the Federal emergency relief administration and paid from Federal funds, was under the direction and control of the town officers, warranted a finding by the Industrial Accident Board that he was an employee of the town.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

In the Superior Court a decree was entered by order of *Greenhalge*, J., dismissing the claim.

*Nunziato Fusaro & Nicholas Fusaro,* for the claimants, submitted a brief.

*G. Gleason,* (*W. G. Reed* with him,) for the insurer.

PIERCE, J.   This is an appeal by the claimants from a decree of the Superior Court, dismissing the claim for compensation and reversing the findings and decision of the Industrial Accident Board, which affirmed and adopted the findings and decision of the single member. G. L. (Ter. Ed.) c. 152.

The only question involved in the case is whether there is any evidence to sustain the Industrial Accident Board's finding that the deceased was an employee of the town of Princeton at the time he received the injuries from which he died.   The claimant relies on the settled law of the Commonwealth that findings of fact by the Industrial Accident Board will not be disturbed if there is any evidence, no matter how slight, to sustain them.   *Doherty's Case,* 222 Mass. 98.   *Savage's Case,* 222 Mass. 205.   *Crowley's Case,* 223 Mass. 288.   *Devine's Case,* 236 Mass. 588.   *Cooper's Case,* 271 Mass. 38.

The reported evidence warranted the finding of facts, in substance, as follows: The deceased resided in the town of Princeton.   The town was the owner of Woodlawn Cemetery, and was desirous of doing some work therein.   One Robert B. Mason was cemetery commissioner during the time the deceased worked at the cemetery.   Mason drew up specifications and figured the cost for labor and material in doing certain work in the cemetery.   In February, 1935, the town appropriated money for work to be performed on this project.   Application for funds was then made to one Warren F. Bryant, who was the local administrator for the Emergency Relief Administration (hereafter referred to as the E. R. A.) "from approximately April 1, 1935, to the end of the E. R. A. the first of December, 1935."   The application was filled in by Bryant and was signed by the chairman of the cemetery commissioners and the chairman of the board of selectmen of the town of Princeton, as was required. "The arrangement made between the town of Princeton and the Federal government was that the Federal government

would furnish the town of Princeton with money to pay labor; provided that the town of Princeton would pay for all tools, material, equipment and any cost involved other than labor." The Federal government furnished a total of $1,700 for the project that Gates was working on at the time of his death — October 4, 1935. After the application was approved Bryant did not have any further supervision over this work. The men employed on the project came from his office and were regular town men. Those who got jobs in connection with work being done on Federal projects made application to the E. R. A. administrator. If they were in need of jobs or were welfare or aided cases they were placed on the administrator's files. Bryant, when the cemetery project was approved, sent eight men on the job as called for. After the list of names was furnished to the cemetery commissioner, Bryant, as administrator of the E. R. A., had no further supervision or control over the men and had nothing to do with the selection of materials to be used, nor with the equipment, tools and appliances that were needed in the performance of the cemetery project. The cemetery department had control and supervision over the project. "In the event that the department head under whose control the work was being done deemed it necessary to discharge anyone for inefficiency he had the right to do it." Checks for the payment of the men came from some distributing office, and it was a part of the business of the E. R. A. administrator to see that the payrolls were sent every week. The employees sometimes had to sign for their checks and sometimes it was not necessary.

Bryant knew that the deceased was a foreman on one of the jobs of the E. R. A. and when the cemetery project was started, on July 16, 1935, he employed him as foreman of that job at $18 a week. The only time the Federal inspectors appeared on the job was when the engineers came to see if the particular project was in accordance with plans. "The actual supervision of the work was done by department heads of the town of Princeton under whom the project came." "The E. R. A. was strictly a relief

proposition to give men employment." The deceased had never been on the relief rolls of the town of Princeton and he was never aided or assisted by the town except through this job. He was classified as a "relief worker" because if he were not employed on the E. R. A. project it would be necessary for him to receive relief. The cemetery commissioner Mason was commissioner when the deceased worked at the cemetery from July 16, 1935, until his death on October 4, 1935. During this period he gave the deceased "his orders and directions as to how the work was to be done . . . where the work should be done and where he should commence it," "no one else had supervision or control over Mr. Gates," and between July 16, 1935, and October 4, 1935, Mason never saw anyone else directing or controlling the work of the deceased or the men under him. During this time, besides being foreman on the job, the deceased drove a truck. He drove it as often as material was needed — sometimes that would be all day. The truck was a hydraulic dump truck owned by the town of Princeton, and was operated only by the deceased. Mason, in direct examination, testified: "I could tell him [the deceased] to quit the job if I wanted to. I could stop the job." But in cross-examination he said that if he "saw that the men were doing the wrong thing or if there wasn't enough money to carry the thing along the job could be stopped," and that that was "what . . . [he] meant when he said he had the power to discharge the men."

The workmen's compensation act provides that a town may accept the act and shall pay compensation to "laborers, workmen and mechanics employed by it" for injuries arising out of and in the course of their employment. G. L. (Ter. Ed.) c. 152, § 69. By § 1 (4) the word "Employee" is defined as meaning "every person in the service of another under any contract of hire, express or implied, oral or written." The test to determine whether the E. R. A. or the town of Princeton was the employer of the deceased at the time of his injury is the answer to the questions, Who had the direction and control of the deceased and to whom did he owe obedience in respect to his employment?

*Chisholm's Case,* 238 Mass. 412. *Wall's Case,* 293 Mass. 93, 94.

An analysis of the entire evidence, excluding testimony elicited on cross-examination which was inconsistent with the direct testimony for the claimant, discloses that after the money was appropriated by the Federal government supervision of the work was under the town. "The only time Federal inspectors appeared on the job was when engineers came to see if the particular project was in accordance with plans." The administrator of the E. R. A., who received the application of the town for Federal aid for its cemetery project, after the application was approved did not have any further supervision over that work. The evidence warranted the finding of the single member, adopted by the Industrial Accident Board, "that this cemetery project in the town of Princeton was laid out, managed and supervised by the cemetery commissioner of the town of Princeton; and, that all the benefit from this project inured to the town . . . [and] that the deceased . . . was under the control and supervision of the cemetery commissioner of the town of Princeton and was an employee of the town." *Scribner's Case,* 231 Mass. 132. *Chisholm's Case,* 238 Mass. 412, 419. In the opinion of a majority of the court the decree must be reversed and a decree entered for the claimant.

*So ordered.*