(No. 6829.   October 29, 1940.)

GRACE L. PINSON, in Her Own Behalf as Widow of JAMES EARL PINSON and on Behalf of SUSAN PINSON, Dependent Mother of JAMES EARL PINSON, Deceased, and SUSAN PINSON, Respondents, v. MINIDOKA HIGHWAY DISTRICT, Employer, and STATE INSURANCE FUND, Surety, Appellants.

[106 Pac. (2d) 1020.]

Clarence L. Hillman, for Appellants.

H. A. Baker, for Respondents.

BUDGE, J.—In January, 1940, the Minidoka Highway District desired to and did thereafter improve a certain highway within its boundaries under the direction and supervision of G. W. Jones its engineer engaged for that work. The district did not have the necessary machinery for the removal of rock and through its attorney solicited the United States Reclamation Service to furnish an air compressor and operator and two jack-hammers or drills. The reclamation service, with the knowledge of the highway district, furnished an air compressor and operator and two jack-hammers with operators, of whom Pinson, the deceased, was one. The men were engaged by the reclamation service on January 4th for the specific purpose of working on the highway and were told that Jones, the engineer in charge, would tell them what to do. The work was not that of the United States. The men were hired by the reclamation service, paid by the United States and directed to work under the order of the highway engineer.

Mr. Pinson, a man sixty years of age and weighing about 150 pounds, began to work on the highway pursuant to the arrangement above outlined, on January 5th and continued to January 13th, operating a jack-hammer, a machine weighing 65 pounds and operated by a rotating and pounding motion accompanied by violent jerkings and vibrations. On January 13th, the drill the deceased Pinson was operating caught or became stuck in the materials through which it had been driven and he attempted to remove the drill by his own strength and efforts but was unable to do so. A coworker observing his difficulty went to his aid and the two removed the drill. Soon and within ten minutes from the time he endeavored to remove the drill it appeared to the

other occupants of the automobile in which the workers were then riding to another point where work was to be continued that Pinson's sight was failing and there was some discussion with him about it. He complained of severe headache and requested another occupant of the car to drive. When they reached the place where they were to continue work Pinson did not leave the automobile and a short time later one of the workmen returned to the car and found Pinson very sick. Jones, the engineer, directed two men to take Pinson home, one to drive his car and the other to follow in another car to return the men to the job. On reaching home Pinson vomited two or more times and was assisted into the house by Mrs. Pinson. He said he was dreadfully sick, complained of pain over his right eye, could not walk alone or see distinctly and wanted aspirin.

Dr. Elmore was called and found Pinson complaining of severe pain in his head and observed he had difficulty in seeing and in talking and did not have use of his left arm and leg. Pinson told the doctor of the trouble he had in removing the drill. It was the positive conclusion of the attending and a consulting physician that the exertion in his efforts to remove the drill increased the blood pressure in his circulatory system beyond the ability of some blood vessel in his brain to withstand and a rupture resulted, causing paralysis. Later internal infection developed from the rupture causing meningitis from which Pinson died on January 25, 1940, the physician testifying that the primary cause of death was the ruptured blood vessel. Appellants offered no testimony.

From an award by the Industrial Accident Board to Grace L. Pinson, as widow, and to Susan Pinson, as dependent mother, of James Earl Pinson, by reason of his death from injuries alleged to have been received by him, by an accident arising out of and in the course of his employment by the Minidoka Highway District, the Minidoka Highway District, employer, and the State Insurance Fund, surety, appeal.

Appellants advance the contention that the deceased was not an "employee" of the appellant, highway district. Appellants assert that because deceased was hired and paid by the United States, and that the federal statute (5 U. S. C. A. 751) provides "The United States shall pay compensation

. . . . for the death of an employee resulting from a personal injury *sustained while in the performance of his duty.* . . . . '' (emphasis inserted), that the deceased was not an ''employee'' of the highway district and respondent is, therefore, not entitled to prevail in this proceeding.

In *Larson v. Independent School Dist. No. 11J*, 53 Ida. 49, 22 Pac. (2d) 299, this court held:

''The definition of an employee or workman at common law is applicable in determining who is an employee or workman under Workmen's Compensation Acts. (cases)''

From the record it appears that while deceased was engaged by the reclamation service and paid by the United States, he was engaged with his own consent and knowledge, not to work for the United States or the reclamation service, but for the purpose of doing work for the Minidoka Highway District, and directed by the reclamation service to work for the highway district and under the direction of its engineer. Neither the United States nor any of its officers or agents had any control of any character over the deceased while at work or over the work being done by the Minidoka Highway District. The alleged injury occurred while Pinson was working under the direction of the highway engineer on the project of the highway district.

In *Standard Oil Co. v. Anderson*, 212 U. S. 215, 29 Sup. Ct. 252, 254, 53 L. ed. 480, the rule by which to determine whether a person is an employer is stated as follows:

''It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If the other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished. . . . . To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work.''

■■ While the authorities are not without conflict, there is a well-established rule to the effect that the question of the identity of the person who pays compensation is not controlling, and is not a circumstance which is decisive or determinative of the question whether a person to whom an employee is lent becomes his employer. (71 C. J., pp. 407, 408; *Altherhold v. William Stoddart Co.*, 286 Pa. 278, 133 Atl. 504; *Sgattone v. Mulholland & Gotwals*, 290 Pa. 341, 138 Atl. 855, 58 A. L. R. 1463; *Allen-Garcia Co. v. Industrial Com.*, 334 Ill. 390, 166 N. E. 78; *Klemmens v. North Dakota Workmen's Compensation Bureau*, 54 N. D. 496, 209 N. W. 972.) The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, and where the employee comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer, and liable for compensation. (71 C. J., pp. 405, 406; *Tarr v. Hecla Coal & Coke Co.*, 265 Pa. 519, 109 Atl. 224; *Sgattone v. Mullholland & Gotwals, supra*; *Allen-Garcia Co. v. Industrial Com., supra*; *Parsons v. M. J. Daly & Sons*, 114 Conn. 143, 158 Atl. 216; *Gates' Case*, 297 Mass. 178, 8 N. E. (2d) 12; *Northern Trust Co. v. Industrial Com.*, 231 Wis. 133, 285 N. W. 339; *Modlin v. Twin ·Falls Canal Co.*, 49 Ida. 199, 286 Pac. 612; *Palmer v. J. A. Terteling & Sons*, 52 Ida. 170, 16 Pac. (2d) 221; *Larson v. Independent School Dist.*, 53 Ida. 49, 22 Pac. (2d) 299; *Becker v. Industrial Acc. Com.*, 212 Cal. 526, 298 Pac. 979; *Altherhold v. William Stoddart Co., supra*; *Lecker v. Valentine*, 286 Pa. 418, 138 Atl. 792; *Byrne v. Henry A. Hitner's Sons Co.*, 290 Pa. 225, 138 Atl. 826, 58 A. L. R. 865; *Persing v. Citizens' Traction Co.*, 294 Pa. 230, 144 Atl. 97; *Robson v. Martin*, 291 Pa. 426, 140 Atl. 339; *Singer Mfg. Co. v. Rahn*, 132 U. S. 518, at p. 523, 10 Sup. Ct. 175, 33 L. ed. 440; *Cayll v. Industrial Com.*, 172 Wis. 554, 178 N. W. 771.)

■ The deceased worked under the direct control of the Minidoka Highway District and at the time of the alleged accident he was furthering the business and affairs of the said highway district which became his temporary employer and

liable for compensation under the Workmen's Compensation Act. (I. C. A., sec. 43–1001.)

■ Appellants further contend that the board failed to find that the personal injury was "caused by an accident." The board found:

"That the stroke with which the said Pinson was suffering as above stated, was the result of his lifting and straining on the drill which had become stuck in the hole as above stated, and was a personal injury by accident arising out of and in the course of his employment."

Appellants' contention as stated in their brief is:

"That under no circumstances can such awards be sustained because there is no finding to support the same that the alleged personal injury was *caused* by *an* accident. . . . ."

It is appellants' apparent contention that the word "caused" should have been inserted between the words "injury" and "by" and the word "an" between the words "by" and "accident." The findings in question follows findings detailing the events as they had taken place. We are unable to distinguish a difference in meaning between saying deceased received "a personal injury caused by an accident" and saying he received "a personal injury by accident" and the Workmen's Compensation Act should not be construed to defeat its very purpose by such supertechnical construction.

■■ Appellants' remaining contention is one that has been heretofore considered by this court on several occasions, appellants urging that there was no accident because the deceased was doing the work he expected to do and in the manner contemplated; that since it is not an unusual occurrence for a drill to become caught or stuck, there can be no "accident" in the absence of a fall, a slip, or a stumble on the part of the workman or a breakdown on the part of the machinery operated by him. To constitute an "accident" it is not necessary that the workman slip or fall or that the machinery fail. An "accident" occurs in doing what the workman habitually does if any unexpected, undesigned, unlooked-for or untoward event or mishap, connected with or growing out of the employment, takes place. (*Hieronymus v. Stone's Food Stores, Inc.*, 60 Ida. 727, 96 Pac. (2d) 435;

*Cook v. Winget,* 60 Ida. 561, 94 Pac. (2d) 676; *In re Larson,* 48 Ida. 136, 279 Pac. 1087; *Aldrich v. Dole,* 43 Ida. 30, 249 Pac. 87; *McNeil v. Panhandle Lumber Co.,* 34 Ida. 773, 203 Pac. 1068.) The amendment of I. C. A., section 43–1001, contained in chapter 161, section 1, 1939 Session Laws, does not alter the conclusion to be reached. The amendment contains a definition of "accident" as follows:

" 'Accident,' as used in this law, means an unexpected, undesigned, and unlooked for mishap, or untoward event, happening suddenly and connected with the industry in which it occurs, and which can be definitely located as to time when and place where it occurred, causing an injury, as defined in this law."

The forepart of this definition includes nothing not essential to an accident under the earlier decisions of this court heretofore referred to. In other words the definition of an "accident" as defined by this court in former decisions was adopted by the legislature as its definition of an "accident." The additional requirement that the mishap or event relied upon be definitely located as to time when and place where it occurred contained in the amendment is clearly and fully met by the proof herein. The amendment further provides that the terms "injury" and "personal injury" as the same are used in the law shall be construed to include only an injury by an accident, as above defined, which results in violence to the physical structure of the body, and that said terms shall in no case be construed to include an occupational disease in any form and only such non-occupational diseases as result directly from an injury. All additional requirements contained in the amendment and pertinent herein were fully met by the proof.

The award of the Industrial Accident Board should be and is hereby affirmed.

Ailshie, C. J., and Givens, Morgan and Holden, JJ., concur.