742 P.2d 411

**Theodore PAULLAS, Claimant-Appellant,**

v.

**ANDERSEN EXCAVATING, Employer, and State Insurance Fund, Surety, Defendants-Respondents.**

**No. 16437.**

Supreme Court of Idaho.

July 16, 1987.

Rehearing Denied Sept. 21, 1987.

Michael J. Verbillis, Coeur d'Alene, for claimant-appellant.

Robert D. Lewis, of the firm Cantrill, Skinner, Sullivan & King, Boise, for defendants-respondents.

BISTLINE, Justice.

Andersen Excavating is the business name of a sole proprietorship of Charles V. Andersen. Andersen's business lies primarily in excavation work. Theodore Paullas has worked for several years as a truck driver and heavy equipment operator. He is president of a corporation named Paullas Enterprises, Inc. He and his wife jointly own all of the issued and outstanding stock of the corporation. His wife is an officer of the corporation and he and his wife are directors. The corporation provides insurance for its employees under the Idaho Workmen's Compensation Law by the Idaho State Insurance Fund. However, the corporation, through Mrs. Paullas, specifically rejected coverage for corporate officers who own more than ten percent of the outstanding stock and who are also directors of the corporation.

From time to time, Paullas engages in construction work using equipment owned by his corporation. Mr. Paullas and Mr. Andersen have worked jointly on projects in other instances. The manner in which they have cooperated is the following: One of the parties obtains a bid on a construction project and the other performs services for the successful bidder under oral agreements. Both parties understood that when one of them had obtained the bid on a project that the successful bidder would be *the person in charge* of the project. Paullas also rents equipment to other equipment operators.

In December of 1984 Andersen obtained a bid for the excavation and installation of a sewer line. Although Andersen had some equipment of his own, he used rented equipment on this project as well. He rented a backhoe, a caterpillar, bulldozer and other equipment. Paullas Enterprises supplied a front-end loader. It was understood that the loader was rented at $35 an hour for the actual time it was operated. The

loader had been operated by either Andersen or another individual who was identified as an employee of Lakeshore Construction.

On the morning of December 20, 1984, Andersen telephoned Mrs. Paullas in order to request that Mr. Paullas deliver a load of gravel to the construction site. Paullas, using his dump truck, obtained the gravel and delivered it to the site in locations designated by Andersen. After the gravel had been delivered, Andersen instructed Mr. Paullas to remain at the site to operate the front-end loader.

It was understood between the parties, due to prior dealings between them, that Paullas would be paid $10 per hour for his work as a loader operator. Payment was made directly to Paullas Enterprises, Inc. In turn, the corporation paid Mr. Paullas a salary. This arrangement was utilized for purposes of accounting, as per directions of an accountant.

Andersen asked Paullas to backfill a sewer trench to a depth of three feet so that the trench could be filled and compacted over the sewer pipe. After backfilling a portion of the trench it was discovered that the front-end loader would not fit into the trench in order to level the backfill material. Andersen left the site to obtain a bulldozer that would be suitable for leveling the trench.

Paullas remained on the site and, armed with a hand shovel, entered the trench for the purpose of installing pipe, which includes shoveling bedding material under the pipe. Bedding is placed under the pipe so that the pipe will not be broken when the backfill is placed over it and compacted. While Paullas was working, the side of the trench gave way, pinned Paullas in the trench, and inflicted serious injuries.

Before the Commission, Paullas sought workman's compensation benefits for his injuries from Andersen Excavating and the State Insurance Fund. Andersen testified that he considered that Paullas was his employee on that fateful day. The surety, having denied the claim, contended that Paullas was an independent contractor and not an employee. Mr. Paullas did not file a claim on the policy issued to him by the State Insurance Fund to Paullas Enterprises because that entity had specifically rejected coverage for him because of his capacity of corporate officer, director, and major shareholder.

The Commission specifically found that Paullas's work at the Andersen construction site on December 20, 1984 was performed as an employee and corporate officer of Paullas Enterprises and not as an employee of Andersen Excavating. *See* R., p. 65. On reconsideration, Paullas raised for the first time the issue of whether Paullas was a loaned or borrowed servant on the date in question. The Commission ruled that the evidence did not establish that Paullas had a contract for services with Andersen or that Andersen had the right to control the details of Paullas's work as distinguished from the overall results to be achieved. As a result, the Commission denied that the injury was compensable under Andersen's insurance policy.

This appeal presents two issues:

1. Whether the Commission erred by concluding that Paullas was not an employee of Andersen Excavating on the date of his injury.

2. Whether the Commission erred by concluding that Paullas was not a "borrowed" or "loaned" servant of Andersen Excavating on the date of his injury. In addition, the State Insurance Fund urges us to abandon the right-to-control test for determining whether a claimant's injuries should be compensable within the provisions of Idaho's Workmen's Compensation Act and requests attorney's fees for this appeal. Our affirmative answer on Issue No. 2 is dispositive.

This Court's standard of review of Industrial Commission orders is limited to questions of law. Idaho Const. art. 5, § 9; *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972). Where the evidence is uncontroverted, the only question of law presented is whether the Commission made a proper application of the law to the evidence, *Ledesma v. Bergeson*, 99 Idaho 555, 585 P.2d 965 (1978); *Wachtler v. Calnon*, 90 Idaho 468, 413 P.2d 449 (1966).

In this case, the primary evidence pertinent to the issues was offered by Paullas and Andersen. Their testimony cannot be said to be conflicting, contradictory, or inherently incredible. *Pierstorff v. Gray's Auto Shop*, 58 Idaho 438, 74 P.2d 171 (1937), *holding reaffirmed* in *Dinneen v. Finch*, 100 Idaho 620, 603 P.2d 575 (1979); *Quick v. Crane*, 111 Idaho 759, 727 P.2d 1187 (1986). Thus, we may freely review the Commission's application of the law to the uncontroverted evidence.

## I.

An affirmative response to either of the issues of law listed above would require a reversal of the Commission's order. Since we determine that Paullas was a "borrowed" servant of Andersen Excavating on the date of his injury, we need not discuss whether he was an employee of Andersen. Nevertheless, we observe that the two issues are closely related. Even if Paullas could not be considered Andersen's direct employee, Andersen's insurance coverage remains liable to compensate for Paullas' injuries if Paullas was a "borrowed" servant at the time of injury. The two statuses share a common test—the right-to-control test. *Pinson v. Minidoka Highway District*, 61 Idaho 731, 106 P.2d 1020, (1940); *accord, State ex rel. Ferguson v. District Court*, 164 Mont. 84, 519 P.2d 151 (1974). *Pinson* elaborates on the test:

In *Standard Oil Co. v. Anderson*, 212 U.S. 215, 29 Sup.Ct. 252, 254, 53 L.Ed. 480, the rule by which to determine whether a person is an employer is stated as follows:

"It sometimes happens that one wishes a certain work to be done for his benefit, and neither has persons in his employ who can do it nor is willing to take such persons into his general service. He may then enter into an agreement with another. If the other furnishes him with men to do the work, and places them under his exclusive control in the performance of it, those men become *pro hac vice* the servants of him to whom they are furnished.... To determine whether a given case falls within the one class or

the other we must inquire whose is the work being performed—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work."

While the authorities are not without conflict, there is a well-established rule to the effect that the question of the identity of the person who pays compensation is not controlling, and is not a circumstance which is decisive or determinative of the question whether a person to whom an employee is lent becomes his employer.... [Citations omitted.] The general test is the *right* to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, and where the employee comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer, and liable for compensation.

*Pinson, supra*, 61 Idaho at 736–37, 106 P.2d at 1022. *See also Brown v. Jerry's Welding & Construction Co.*, 104 Idaho 893, 665 P.2d 657 (1983); *Nelson v. World Wide Lease, Inc.*, 110 Idaho 369, 716 P.2d 513 (Ct.App.1986); *Wise v. Armold Transfer & Storage Co., Inc.*, 109 Idaho 20, 704 P.2d 352 (Ct. App.1985).

Additional factors germane to loaned employee status are: (1) whether the employee has made a contract for hire, express or implied, with the special employer, and (2) whether the work being done is essentially that of the special employer. 1CA. Larson, Workmen's Compensation, § 48.00 (1986).

In its order denying reconsideration, the Commission concluded that the evidence established no contract for hire, that Andersen did not have the right to control the details of Paullas' work, and that the work done by Paullas was that of Paullas Enterprises. R., p. 89. We cannot agree.

The questions of whether there was a contract for hire, and whether the work performed was essentially that of the special employer [Andersen] are easily disposed of. The evidence was uncontroverted that Paullas and Andersen had worked jointly on several excavation jobs. Their practice was that when one of them obtained a bid, the other would perform services for the successful bidder under oral agreements. In this case, Paullas was paid $10 an hour for his time. Payment for services rendered should have led the Commission toward the inescapable conclusion that there was a contract for hire.

It is equally difficult to imagine how the Commission concluded that the work done was that of Paullas Enterprises. Neither Paullas, individually, nor his corporate entity would have even been on the site had not Andersen obtained a bid to extend a sewer line for Bob Templin of Post Falls, Idaho. Paullas was performing services required of Andersen under his contract with Templin. It is true that, incidentally, Paullas's corporation rented a loader to Andersen's sole proprietorship. However, this did not change the essential nature of the work being performed by Paullas—which was either driving the loader or doing manual labor. Significantly, Paullas was injured when placing bedding under the sewer pipe with a hand shovel. We deem it of little significance who furnished the shovel. It is far from amounting to a major piece of equipment. Clearly, the nature of the manual work he was doing at the time of injury was labor performed which was required of Andersen in fulfillment of his contractual obligation with Bob Templin.

Thus, having satisfied two of the requirements for borrowed employee status, we turn to the third element, the right to control the details of the work. On this point, the evidence, again, was uncontroverted. The testimony of Paullas and Andersen corroborated each other as the transcript excerpts below well demonstrate:

Q. [MR. VERBILLIS] ... There's no question in your mind that you had the right to control the activities of Mr. Paullas on December 20th when he was at your job site; is that correct?

A. [MR. ANDERSEN] Yes.

Q. In fact, you did exercise that control, did you not?

A. Yes.

Q. You discussed where to dump, where to dig, this sort of thing, where to fill. At the precise moment he was injured, you didn't tell him specifically to get in the ditch, but he was there, filling your expectations; is that correct?

A. Yes.

Q. Okay. As the person that engaged Mr. Paullas that day, do you feel you had the right to run him off the job?

A. Yes.

Q. And he was, in fact, using tools provided by you at the job site when he got injured; is that correct?

A. Yes.

Q. The fact that you rented one of them from him doesn't change that because at the time you rented it, it was your tool, was it not?

A. Yes.

Tr., pp. 40–41.

Q. [MR. VERBILLIS] ... From your past workings with Mr. Andersen, as I understand it, he's worked for you at times, has he not?

A. [MR. PAULLAS] Yes, he has.

Q. When he works for you, between the two of you, who is considered to be the boss?

A. If it's my job, I'm the boss.

Q. And is it the reverse—

A. Vice versa.

Q. Vice versa. And on this occasion, then, between the two of you, at least, you felt that he was the boss?

A. Yes, definitely.

Q. From your past workings with him and from working in these fields, is it your experience that you have to be sort of watched all the time about what's to be done at every given moment or is the contrary true?

A. No. I don't think I have to be watched, and I don't think he has to be watched.

Q. Okay. So, in other words, you're not given a laundry list of things and having someone watch you every moment on the job; you're told "this has to be done," and you go off and do it; is that correct?

A. Right.

Q. If you were to have dumped the load of gravel that you mentioned he showed you where to dump—

A. Yes.

Q.—in a place other than where he instructed you to, from your past experience, would have have pleased him or would that not be—

A. Not so.

Q. Okay. In other words, if he told you where to dump something, you were supposed to do it there?

A. Yes.

Tr., pp. 65–67.

On cross-examination, counsel for Andersen Excavating and the state Insurance Fund did not even attempt to discredit this testimony of Mssrs. Paullas and Andersen. Their testimony comprised the only evidence before the Commission on the right-to-control issue. Yet, the Commission concluded that Andersen did not have the right to control the details of Paullas' work. R., p. 89. However, this conclusion was in violation of our longstanding rule that the unimpeached testimony of a credible witness must be accepted as true by the finder of fact unless the testimony is inherently improbable. *Pierstorff, supra,* 58 Idaho at 447–48, 74 P.2d at 175. Interestingly enough, *Pierstorff* was a workmen's compensation case.

In all pertinent respects, this case is similar to *Pinson, supra,* the seminal "borrowed servant" case in Idaho. In *Pinson* the highway district contracted with the United States Reclamation Service to provide men and equipment to improve portions of a highway. The men were under the direction and supervision of a highway district engineer. Mr. Pinson was fatally injured on the job. The Court affirmed an order of the then Industrial Accident Board which awarded compensation from the State Insurance Fund.

In this case, Andersen contracted orally with Paullas Enterprises, through Mr. Paullas, to provide the services of Mr. Paullas and rented equipment for the purpose of extending a sewer line for the benefit of Andersen Excavating's contractual obligation to Bob Templin. Mr. Paullas was under the supervision and control of Andersen. The factual and legal similarities render *Pinson* controlling authority. Therefore, we reverse and remand to the Commission for a determination of the amount and type of compensation that is due Mr. Paullas.

II.

The State Insurance Fund urges us to abandon the "right-to-control" test and, instead, adopt what is called a "relative nature-of-the-work" test advanced by Professor Larson. This alternative test has been discussed in *Sines v. Sines,* 110 Idaho 776, 777 n. 1, 718 P.2d 1214, 1215 n. 1 (1986). *See also Burns v. Nyberg,* 108 Idaho 151, 156, 697 P.2d 1165, 1170 (1985) (Bistline, J., dissenting). To date, however, a majority of this Court has been disinclined to adopt the new test and, thus, overturn literally dozens of prior Idaho cases. We are similarly reluctant today.

*Reversed and remanded* for further proceedings consistent herewith. Costs to appellant.

DONALDSON and HUNTLEY, JJ., concur.

SHEPARD, Chief Justice, dissenting.

I cannot agree with the majority's conclusion reversing the Commission's decision.

The standard of review of Industrial Commission orders by this Court is limited. I.C. § 72–732 provides in pertinent part:

Disposition of appeal—Jurisdiction of supreme court.—Upon hearing the court may affirm or set aside such order or award, or may set it aside only upon any of the following grounds:

(1) The commission's findings of fact are not based on any substantial competent evidence;

Clearly, this Court is not to substitute its views of the facts for the findings made by the Industrial Commission if those findings are supported by substantial evidence. *Snyder v. Burl C. Lange, Inc.,* 109 Idaho 167, 706 P.2d 56 (1985); *Johnson v. Amalgamated Sugar Company,* 108 Idaho 765, 702 P.2d 803 (1985); *Lopez v. Amalgamated Sugar Company,* 107 Idaho 590, 691 P.2d 1205 (1984); *Bell v. Clear Springs Trout Company,* 107 Idaho 568, 691 P.2d 1183 (1984); *Nelson v. Pumnea,* 106 Idaho 48, 675 P.2d 27 (1983); *Hayes v. Amalgamated Sugar Company,* 104 Idaho 279, 658 P.2d 950 (1983); *Troutner v. Traffic Control Company,* 97 Idaho 525, 547 P.2d 1130 (1976); *Dean v. Dravo Corporation,* 97 Idaho 158, 540 P.2d 1337 (1975); *Gradwohl v. J.R. Simplot Company,* 96 Idaho 655, 534 P.2d 775 (1975); *Levesque v. Hi-Boy Meats, Inc.,* 95 Idaho 808, 520 P.2d 549 (1974).

In my view, the majority, in disregard of the Commission's findings, is making its own findings as they interpret the facts. The majority has clearly exceeded this Court's boundary of review.

The Commission found that:

> [T]he presence of claimant, Theodore Paullas at the Andersen construction site on December 20, 1984 was in his capacity as employee and corporate officer of Paullas Enterprises and not as an employee of Andersen Excavating. The services performed by Paullas for Andersen on December 20, were in the capacity of an independent contractor engaged to haul gravel to the worksite and to backfill the sewer trench and perform related work. This was the type of work commonly performed by Paullas Enterprises, either through its corporate president or other employees. The services were often performed for other employers and, on a number of occasions, for Andersen. Paullas did not become Andersen's employee by performing the services at Andersen's worksite on December 20, 1984.

This Court in *Pinson v. Minidoka Highway District,* 61 Idaho 731, 737, 106 P.2d 1020, 1022 (1940), laid out the test in establishing an employer-employee relationship.

> The general test is the right to control and direct the activities of the employee, or the power to control the details of the work to be performed and to determine how it shall be done, and whether it shall stop or continue, that gives rise to the relationship of employer and employee, and where the employee comes under the direction and control of the person to whom his services have been furnished, the latter becomes his temporary employer, and liable for compensation. (71 C.J., pp. 405, 406; *Tarr v. Hecla Coal & Coke Co.,* 265 Pa. 519, 109 Atl. 224; *Sgattone v. Mullholland & Gotwals,* supra [290 Pa. 341, 138 A. 855]; *Allen-Garcia Co. v. Industrial Com.,* supra [334 Ill. 390, 166 N.E. 78]; *Parsons v. M.J. Daly & Sons,* 114 Conn. 143, 158 Atl. 216; *Gates' Case,* 297 Mass. 178, 8 N.E.(2d) 12; *Northern Trust Co. v. Industrial Com.,* 231 Wis. 133, 285 N.W. 339; *Modlin v. Twin Falls Canal Co.,* 49 Ida. 199, 286 Pac. 612; *Palmer v. J.A. Terteling & Sons,* 52 Ida. 170, 16 Pac.(2d) 221; *Larson v. Independent School Dist.,* 53 Ida. 49, 22 Pac.(2d) 299; *Becker v. Industrial Acc. Com.,* 212 Cal. 526, 298 Pac. 979; *Altherhold [Atherholdt] v. William Stoddart Co.,* supra [286 Pa. 278, 133 A. 504]; *Lecker v. Valentine,* 286 Pa. 418, [133] 138 Atl. 792; *Byrne v. Henry A. Hitner's Sons Co.,* 290 Pa. 225, 138 Atl. 826, 58 A.L.R. 865; *Persing v. Citizens' Traction Co.* 294 Pa. 230, 144 Atl. 97; *Robson v. Martin,* 291 Pa. 426, 140 Atl. 339; *Singer Mfg. Co. v. Rahn,* 132 U.S. 518, at p. 523, 10 Sup.Ct. 175 [176], 33 L.ed. 440; *Cayll v. Industrial Com.,* 172 Wis. 554, 178 N.W. 771.)

Further, in *Ledesma v. Bergeson,* 99 Idaho 555, 585 P.2d 965 (1978), this Court held that the issue of whether an employer-employee or principal-independent contractor relationship exists, is to be determined from all the facts and circumstances established by the evidence. *See also Merrill v. Duffy Reed Construction Co.,* 82 Idaho 410, 353 P.2d 657 (1960); *Taylor v. Blackwell Lumber Co.,* 37 Idaho 707, 218 P. 356 (1923).

The Commission in its findings of fact, set forth the following factors in making its determination: Andersen did not control Paullas' activities at the time of injury; Andersen had left the job site at the time

of the accident; Paullas was injured while placing bedding material under the pipe in the sewer trench at his own discretion; Andersen and Paullas had a long-standing relationship whereby they would work for each other as needed; Paullas was working with Andersen under this standard arrangement at the time of injury; Paullas was employed by his own corporation at this time.

These factors clearly support the Commission's finding that Paullas was not an employee of Andersen Excavating. The Industrial Commission, as created by the Idaho legislature, is the designated authority to weigh the evidence and determine the credibility of witnesses. *See Hayes v. Amalgamated Sugar Company, supra; Murray v. Hecla Mining Co.*, 98 Idaho 688, 571 P.2d 334 (1977); *Gradwohl v. J.R. Simplot Co., supra; Earl v. Swift & Company*, 93 Idaho 546, 467 P.2d 589 (1970); *Duerock v. Acarregui*, 87 Idaho 24, 390 P.2d 55 (1964).

Thus, I can only conclude that the Commission was acting within its province and should be affirmed.

BAKES, J. concurs.