No. 13194

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

FATAL: WILLIAM C. KIMBALL, VIVIENNE F.
KIMBALL, Widow,

            Claimant and Appellant,

    -vs-

CONTINENTAL OIL COMPANY, Employer,
HARTFORD ACCIDENT AND INDEMNITY COMPANY,

            Defendants and Respondents.

---

Appeal from: District Court of the Twelfth Judicial District,
            Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellant:

        Morrison, Ettien and Barron, Havre, Montana
        Robert D. Morrison argued, Havre, Montana
        Burns, Solem and MacKenzie, Chinook, Montana

    For Respondents:

        Alexander, Kuenning, Miller and Ugrin, Great Falls,
        Montana
        Edward C. Alexander argued, Great Falls, Montana

---

                        Submitted: April 19, 1976

                        Decided: JUN -4 1976

          JUN -4 1976
Filed:

_Thomas J. Kearney_
                              Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from an order of the district court, Blaine County, affirming the decision of the Workmen's Compensation Division of the Department of Labor and Industry of the state of Montana, awarding compensation.

This case began with an Industrial Accident Board Accident-Injury Investigation report filed with the Board on June 19, 1973. A copy of the report filed with the Board was sent to Continental Oil Company, whose consignee Richard Brainard had its bulk plant in Chinook, Montana, where the accident occurred. Thereafter, on July 30, 1973, Continental Oil Company filed with the Workmen's Compensation Division its Form 37, "Employer's First Report of Occupational Injury or Disease". Thereafter there was correspondence between the claim manager of Hartford Accident & Indemnity Company (Continental's insurer) and the Workmen's Compensation Division as to whether or not Brainard was an independent contractor or an employee of Continental Oil Company by reason of his contract.

In the meantime the law firm of Alexander, Kuenning, Miller & Ugrin of Great Falls, Montana, was asked by Hartford for an opinion on the legal problems raised by the accident. On June 12, 1973, Mr. Alexander wrote to Richard C. Sherman, claim manager for Hartford, giving the opinion that there was probable coverage under the Workmen's Compensation Act.

On October 31, 1973, Vivienne Kimball, widow of William H. Kimball victim of the reported accident, employed counsel to represent her before the Industrial Accident Board. Counsel petitioned the Board for a determination of claim for compensation by beneficiaries. Thereafter, the matter was heard on August 21, 1974. Following the decision of the hearing examiner and affirmance of that decision by the administrator of the Workmen's Compensation Division, the matter was appealed by Vivienne Kimball

to the district court which on September 3, 1975, affirmed
the decision of the Workmen's Compensation Division. We note
here that the beneficiaries received the maximum benefits that
could be given under the Workmen's Compensation Act.

Here, the fact situation is an unusual one and the status
of the deceased was difficult to ascertain. The legal pro-
cedures followed by the widow were of her own choice, not this
Court's. The dissenting opinion herein takes the position that
the majority would prevent a deserving widow from obtaining a
just recovery from an oil company which failed to operate within
the laws of this state by denying that Kimball was an employee
and thus entitled to social security benefits, minimum wage,
unemployment compensation benefits or workmen's compensation.
This does not appear in the record before this Court, nor is
there any finding of responsibility on the parties based on the
facts of the accident on liability.

The record reveals:

1. Claimant on May 2, 1974, petitioned the Industrial
Accident Board for determination of claim for compensation by
beneficiaries.

2. The matter was heard and determined, with counsel
of claimant's choice representing her, before a hearing examiner
and a district judge.

Procedurally, whether or not this was the way to settle
whether or not her husband was or was not an employee of the
oil company, we will not comment upon other than to note that as
a result she was awarded 598.20 weeks of compensation benefits
and medical costs incurred to the time of her husband's death.
Her later position before the district court and this Court,
that her husband was not an employee of either Brainard or the
Continental Oil Company could only be decided in the final
instance by the controlling statutory and case law of Montana.

- 3 -

On May 11, 1973, William G. Kimball was severely burned while loading a gas truck on premises owned by the Continental Oil Company located in Chinook, Montana and died ten days later as a result of the injuries. At the time of the accident Kimball was performing services for Richard Brainard, a friend, who was the bulk plant operator for Continental. Brainard was away on active duty in the Army Reserve and had asked Kimball to make deliveries of gas during his absence.

Prior to leaving, Kimball had accompanied Brainard on several delivery trips for the purpose of familiarizing himself with the equipment and the various customers. Kimball did not appear on Brainard's books as an employee, no withholding or social security was paid for him, nor any workmen's compensation payments made to protect him. His relationship was characterized as one of friendship, rather than that of employer-employee. However, following Kimball's death, Brainard paid the widow $307.00, an amount based on a penny a gallon for the gasoline delivered by Kimball during Brainard's absence.

The Workmen's Compensation Division, following investigation of the accident, held a hearing and found that under the facts Kimball was an employee of Continental Oil Company. On appeal to the district court, the decision was affirmed.

The sole issue before this Court is whether William C. Kimball was an employee of the Continental Oil Company bulk plant operator, Richard Brainard, at the time of the accident.

Appellant Vivienne F. Kimball, widow of William C. Kimball, argues the services performed by her husband were strictly "gratuitous" and therefore there could not have been the necessary employer-employee relationship within the meaning of section 92-411, R.C.M. 1947. She urges that applying the control test set forth in State ex rel. Ferguson v. District Court, 164 Mont. 84, 519 P.2d 151, the necessary elements to determine the employee rela-

tionship are lacking, for here there is no specific contract of employment, no specific order on what he should do, and no withholding or specific salary.

Respondents argue the application of the "control test" is not appropriate here as that test is for determining whether one rendering service is an employee or an independent contractor. Here, no one contended that Kimball was an independent contractor, for that position would be inconsistent with the claim that his services peformed were gratuitous. Respondents argue the correct rule to be followed is that when compensation is paid, it is presumed an employer-employee relationship exists. From the evidence it is clear that Kimball expected compensation for his work and in fact received one cent per gallon he delivered.

The hearing examiner found:

"3. That the deceased claimant was employed by Richard Brainard, the bulk plant operator, to handle his duties while he was away on military duty, for a period of seventeen days from about April 25, 1973 through May 11, 1973, the day of his injury, a period of 2.42 weeks, during which he earned an amount of $307.-- which was paid to his widow on May 30, 1973, an amount that would average $126.86 per week.

"* * *

"7. That pursuant to the provisions of Finding of Fact No. 5, supra, and pursuant to the provisions of §92-604, R.C.M. 1947, the deceased claimant was covered by the workmen's compensation insurance carried by the Continental Oil Company."

The district court heard the appeal from the Division's decision, and upon examination of the record found there was substantial evidence to support the findings of the examiner. Having so found, it was incumbent on the district court to sustain those findings and the resulting conclusions. Section 92-834, R.C.M. 1947; DeLeary v. Anaconda Aluminum Co., _____Mont._____, 541 P.2d 788, 32 St.Rep. 1041; Hurlbut v. Vollstedt Kerr Company, _____Mont._____, 538 P.2d 344, 32 St.Rep. 752.

In cases arising under the Workmen's Compensation Act this Court must sustain the Division action if the evidence is sufficient to support the findings, even though some evidentiary

conflict may exist.  Lewis v. Anaconda Company, _____ Mont. _____,

543 P.2d 1339, 32 St.Rep. 1227.  The applicable rule has remained

unchanged since its adoption in Cartwright v. Industrial Acc.Bd.,

115 Mont. 596, 599, 147 P.2d 909:

> "Our function in this case is to determine whether
> or not there is substantial evidence to support
> the judgment of the district court. * * *"

The judgment of the district court is affirmed.

_____
Justices

We Concur:

_____

_____

_____
Justices.

Hon. Arnold Olsen, District Judge, sitting in place of Chief Justice James T. Harrison, dissenting:

The facts as related in the majority opinion are agreed to.

However, this Judge dissents.

Under the common law, "there are four elements which are considered upon the question whether the relationship of master and servant exists--namely, the selection and engagement of the servant, the payment of wages, the power of dismissal, and the power of control of the servant's conduct--the really essential element of the relationship is the right of control, that is, the right of one person, the master to order and control another, the servant, in the performance of work by the latter, and the right to direct the manner in which the work shall be done." 53 Am Jur 2d, Master and Servant, §2, p. 82.

The majority opinion, parenthetically, without expressly wording so, upholds a Workmen's Compensation rule favoring claimants to qualify a contending claimant-employee who can establish "compensation in whatsoever kind" is an employee.

Appellant here brings to question whether or not Continental Oil Company can escape the greater liability of common law by insisting that Kimball was an employee at the time of his fatal accident and thus Appellant denies Kimball was an employer.

The Continental Oil Company has gone to great lengths denying an employee-employer relationship with the operation of the premises herein. This is a specific case of example of the Continental Oil Company practice of denying that the bulk plant operator, Brainard, is an employee and denying that anybody on Brainard's staff is an employee. Both Brainard and the Continental Oil Company deny that Kimball was an employee to be entitled to Social Security Benefits, deny that Kimball

- 7 -

is entitled to protection under the laws relating to a Minimum Wage, deny that Kimball was an employee entitled to Unemployment Compensation Insurance, deny that Kimball was an employee entitled to Workmen's Compensation Insurance coverage, or even entitlement to safety inspection protection by the Workmen's Compensation Division of Montana, indeed these defendants, now calling themselves employers, have denied to the general public that Kimball was their agent. So for all their purposes, to the world, Kimball was not an employee.

But, now, when there poses a possible greater liability under the common law, that Kimball's widow might be entitled to a greater liability, against Continental Oil Company, that company wants the benefit of the clothing of an employer for the purpose of denying the widow of the deceased Kimball an entitlement to come to the courts of Montana claiming at common law for the destruction of the life of Kimball.

Continental Oil Company should not be heard to say any such defense having held itself out as not an employer to all the world. Continental Oil Company should not be heard by a court of this state to escape the greater liability now that they have evaded all liabilities of an employer heretofore.

The widow Kimball should be entitled to bring action against Continental Oil Company without classifying her deceased husband as an employee and her election to do so should not exclude her from any other remedy. The Court should say, "Welcome, widow Kimball, you may seek all remedies and waive none of them."

In Montana by Section 92-201, R.C.M.1947, in an action to recover damages sustained by an employee in the course of his employment, or for death from personal injuries so sustained, the common law defenses of employer are repealed. By Section 92-211, R.C.M. 1947, "No compensation shall be paid to any employee, whether such employee has elected to come under this

act or not, where his employer has failed to elect, and has failed to come under one or the other of the compensation plans herein provided."

Under the Workmen's Compensation Law of Montana, this Continental Oil Company, has elected not to be covered by the Workmen's Compensation Act and can pay the employee no compensation under the Workmen's Compensation Act nor can the defendants insure under the Act.

The Continental Oil Company, whether an employer or not, is answerable to the widow of Kimball and now the oil company (having admitted its employment) has been stripped of its common law defenses. Regardless of Kimball status, whether he be an invitee to the premises, a volunteer, a gratuitous servant, indeed if Kimball was an employee, liability attaches--but if an employee, the liability is without common law defenses, and the liability is not limited under the Workmen's Compensation Act.

There is a wide discussion of "Action Against Employer" in § 67.10, 2A Larson's Workmen's Compensation Law, and specifically, "As a sort of club to drive employers into election of coverage, the typical act makes the noncovered employer subject to common-law liability without benefit of the defenses of fellow servant, assumption of risk and contributory negligence." Further, in that same section, "Experience has shown that, although the great bulk of employers do elect to come with the acts, there is a strong temptation, particularly in times of depression when employers are desperately looking for ways in which to cut costs of production, to gamble on the possibility that the costs of common-law suits, even without the defenses, will be less than compensation premiums, especially when there are insurance companies who claim to be able to insure the potential common-law risk at a guaranteed saving below compensation insurance costs. This kind of 'stop loss' insurance, however, has serious pitfalls

both for employer and employee which destroy its surface attractiveness from the hard-pressed employers point of view."

Section 67.21 of Larson's, "A common exception to the exclusiveness of the compensation remedy is the right of suit against an employer who fails to secure his compensation liability by taking out insurance or qualifying as a self-insured."

Indeed, one wonders, has the Continental Oil Company given its employees the protection of safety inspection by the Safety Division of the Workmen's Compensation Division. One wonders, has the state of Montana functioned in its lawful directed duties to conduct safety inspections of the plants of the Continental Oil Company. Because Brainard and the Continental Oil Company were not enrolled with the Workmen's Compensation Division, undoubtedly the Safety Division of the Workmen's Compensation Division did not protect the employees.

A large question in this case is whether the Supreme Court of Montana is going to tell the employers of this state and the world, "You don't have to abide by the Workmen's Compensation Act of Montana, we will cover you even if you don't elect to protect your employees under the Workmen's Compensation Act and the incidental safety inspection laws of Montana, we will protect you with the limited liability of the Workmen's Compensation Act regardless of the fact that you haven't been a good employer and a law-abiding employer."

I say, "No, the Continental Oil Company has been an irresponsible employer and should suffer the penalty of the Workmen's Compensation Act, namely, the Continental Oil Company is denied the common law defenses by their failure to elect to insure their employees under the Workmen's Compensation Act."

This Court must announce to the world that employers in this state must abide the Workmen's Compensation Act or they shall be stripped of the common law defenses.

The widow Kimball should be heard to come into the courts of Montana and say, "Here I am, a widow. The life of my husband was taken by reason of the negligence of Brainard and the Continental Oil Company. My husband is dead. I'm entitled

to compensation at common law." Further, this Court, should announce that the only defense of the Continental Oil Company would have been that Kimball was a trespasser; but that the Continental Oil Company lost that defense, too, because of its admission against interest in contending in the action here that they are an employer even though irresponsible.

The widow Kimball should not lose the success of the claim with Workmen's Compensation limited recovery. She has not elected that remedy and she does not have to choose at her peril of losing a common law remedy. I see the widow Kimball coming into the District Court and saying, "I am a widow. My name is Kimball. My husband went to work at the Continental Oil Plant for Brainard and was injured there and died as a result of his injuries. The Continental Oil Company and Brainard did not protect my husband by safety inspections nor by insurance under the Workmen's Compensation Act nor by any other act did Brainard and the Continental Oil Company designate my husband an employee. I, the widow, am entitled to damages for my losses."

Thereupon the district court announces that Brainard and the Continental Oil Company do not have any of the common law defenses and we will hear what the damages of the widow Kimball are.

The cause should be reversed and remanded to the district court to determine the damages of the Appellant, without the limitations of the Workmen's Compensation Act.

Hon. Arnold Olsen, District Judge, sitting for Chief Justice James T. Harrison.

- 11 -