No. 82-163

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

DEBRA L. CARLSON,

                        Claimant and Respondent,

    vs.

JERRY CAIN,

                        Employer and Appellant,

    vs.

LEE ENTERPRISES, d/b/a
THE BILLINGS GAZETTE,

                        Employer and Appellant,

    and

HARTFORD ACCIDENT AND
INDEMNITY COMPANY,

                        Defendant and Appellant.

---

Appeal from:  Workers' Compensation Court
               Hon. Tim Reardon, Judge presiding

Counsel of Record:

    For Employer, Defendant and Appellants;

        Moulton, Bellingham, Longo & Mather, Billings,
          Montana
        Randy H. Bellingham argued, Billings, Montana

    For Claimant and Respondent:

        Keefer, Roybal, Hanson, Stacey & Jarussi, Billings,
          Montana
        Neil S. Keefer argued, Billings, Montana

    For Respondent and Cross-Appellant:

        Anderson, Brown, Gerbase, Cebull & Jones,
          Billings, Montana
        Steven J. Harman argued, Billings, Montana

---

               Submitted: February 28, 1983

               Decided: June 8, 1983

Filed:  **JUN 8 1983**

*Ethel M. Harrison*

                      Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Employer, Lee Enterprises, d/b/a The Billings Gazette (Gazette) appeals from a decision of the Workers' Compensation Court finding claimant, Debra Carlson, entitled to receive Workers' Compensation benefits from the Gazette's insurer, following her injury in an automobile accident while delivering newspapers for her fiance, Jerry Cain. The court's decision was based on its conclusions that claimant was an employee of Cain; that Cain was an employee of the Gazette, and that he had failed to provide Workers' Compensation insurance for claimant, rendering the Gazette liable for claimant's benefits under Section 39-71-405(2), MCA. Cain cross-appeals. We affirm the Workers' Compensation Court.

The following issues are presented to this Court for review:

1. Whether Debra Carlson was an employee of Jerry Cain.

2. If Debra Carlson was an employee of Jerry Cain, whether such employment is specifically excluded under the following exceptions contained in Section 39-71-401(2) MCA:

    (a)   Casual employment;

    (b)   Employment of members of an employer's family dwelling in the employer's household;

    (c)   Employment of sole proprietors or working members of a partnership;

    (d)   Any person performing services in return for aid or sustenance only.

3. Whether Jerry Cain and Mike Cain were independent contractors of The Billings Gazette?

In November 1979, claimant met Jerry Cain in Miles City. They became engaged during the Christmas season of 1979 and began living together toward the end of December 1979. Jerry

Cain was married to another woman at the time; that marriage was not dissolved until February 22, 1981, because of a prolonged custody dispute. Between January of 1980 and the end of March, 1980, claimant occasionally rode with Cain while he delivered newspapers for Dave Gamble, who had carrier contracts with the Gazette. During this period, Cain, who also worked as a mechanic, made all of the house payments, paid all utilities and provided groceries for claimant and himself. He also provided claimant with the use of an automobile he owned. During this time, claimant sang in a band on weekends, earning approximately $100 per week.

On March 31, 1980, when Dave Gamble's carrier contract expired, Jerry Cain and his father, Mike Cain, signed one contract with the Gazette to haul newspapers from Billings to Fairview, Montana, and all drop points between, and another similar contract to deliver papers from Miles City to Baker. Mike Cain signed the contract and, several weeks later, after the bank turned down Jerry Cain's application for a loan, took out a bank loan, which Jerry Cain co-signed. All evidence indicates Mike Cain's only involvement was to help get his son started as a carrier for the Gazette. Neither the bank nor the Gazette would accept only Jerry Cain's signature. Gazette checks were made out to both Michael and Jerry Cain to insure payment on the bank loan. Mike Cain himself never profited from the contract, nor did he perform any of the work under the contract.

The contracts included the following provisions:

SECTION III. RELATIONSHIP OF PARTIES

" The parties intend that an independent contractor-employer relationship will be created by this contract. The company is interested only in the results to be achieved, and the conduct and control of the work will lie solely with the carrier. The carrier is not to be considered an agent or employee of company for any purpose, and

3

the employees of carrier are not entitled to any of the benefits that the company provides for company employees. The company does not control the carrier in any of the details of performance of this agreement nor does it control the routes to be traveled or the hours of employment or the manner in which the duties of the carrier are performed."

SECTION IV.  LIABILITY

"    The work to be performed under this contract will be performed entirely at carrier's risk, and carrier assumes all responsibility for the condition of his equipment used in the performance of this contract. Carrier will carry, for the duration of this contract, public liability insurance in an amount acceptable to company, and Workmen's Compensation insurance covering his employees. Contractor agrees to indemnify company for any and all liability, loss or claims arising in any way out of the performance of this agreement." (Emphasis supplied.)

The two contracts provided for Cain to be paid a total of $6,470 per month. He was paid bi-monthly.

After the Cains were awarded the contract, claimant began delivering papers to Baker for Jerry Cain three or four times a week. Occasionally she would make the run to Fairview instead of Baker. When claimant did not make the run, Cain had to hire someone else, whom he paid $15 for the Baker run and $30 for the Fairview run. Claimant was not paid any money for making the runs, nor did she receive anything more in the way of support than she had received prior to Cain's receiving the carrier contracts. In May, according to claimant, she discontinued singing in the band "because Cain said we could make more money running the Gazette route than I could in the band." According to Cain, the other members of the band "said they didn't need her anymore."

On June 28, 1980, Carlson suffered severe head injuries in an automobile accident; she was driving a 1979 Mazda furnished by Cain and was returning to Miles City early in the morning, after having delivered a load of newspapers to

4

Baker. As a result of her injuries, claimant, still in her early twenties, has muscular weakness on the left side, some intellectual impairment, and severe headaches. Her throat injuries have affected her ability to sing. She is currently considered unemployable and is attending a vocational training school. She is living with her mother; Cain has married someone else. At the time claimant was injured, Cain was carrying no Workers' Compensation insurance, although the carrier contract expressly required him to do so.

Claimant filed a claim against Jerry Cain with the Uninsured Employers' Fund. Following an investigation, her claim was denied under Section 39-71-401(2)(f), MCA, on the grounds that claimant was "performing a service in return for aid or sustenance only," and was thus exempted from the Workers' Compensation Act. Claimant subsequently filed two petitions for hearing with the Workers' Compensation Court, one against Jerry Cain and the Uninsured Employers' Fund, the second against Lee Enterprises, d/b/a The Billings Gazette and their insurance carrier, Hartford Accident and Indemnity. The two cases were consolidated on July 9, 1981. Trial was held November 20, 1981. Claimant and the Gazette moved the court to dismiss without prejudice as to the Uninsured Employers' Fund, which was bankrupt; the motion was granted. The court ordered additional depositions, briefs, and proposed findings.

The Workers' Compensation Court entered judgment for claimant on April 23, 1982, concluding that Jerry Cain was not an independent contractor, but an employee of the Gazette; that claimant was an employee of Jerry Cain under an implied contract for hire, Section 39-71-118, MCA; and that the Gazette's insurer was liable for claimant's medical expenses, and wage benefits amounting to $100 per week, under

5

Section 39-71-405(2), and 39-71-118, MCA. The Gazette

appeals. Cain cross-appeals, limiting his appeal to

challenging claimant's status as his employee.

We note that where, as here, both facts and legal

conclusions are disputed, two standards of review are

appropriate:

> "When presented with an issue which challenges the sufficiency of the evidence to support the court's findings or challenges the credibility of that evidence, the scope of our review is limited.

> "Our function in reviewing a decision of the Workers' Compensation Court is to determine whether there is substantial evidence to support the findings and conclusions of that court. We cannot substitute our judgment for that of the trial court as to the weight of the evidence on questions of fact. Where there is substantial evidence to support the findings of the Workers' Compensation Court, this Court cannot overturn the decision. Bond v. St. Regis Paper Co. (1977), Mont., 571 P.2d 372, 34 St.Rep. 1237; Robins v. Anaconda Aluminum Co. (1978), Mont., 575 P.2d 67, 35 St.Rep. 213.' Steffes v. 93 Leasing Co., Inc. [U.S.F. & G. Co.] (1978), Mont. 580 P.2d 450, 452, 453, 35 St.Rep. 816.

> "When, however, presented with an issue which raises only a question of law 'an appellate court is not bound by the findings of the trial court, but is free to draw its own conclusions from the evidence presented.' Walsh v. Eberlin (1977), 114 Ariz. 342, 560 P.2d 1249, 1251; Sapp v. Barenfeld (1949), 34 Cal.2d 515, 212 P.2d 233, 236." Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 422-23, 584 P.2d 1298, 1300.

In Sharp, the facts were relatively undisputed, the

question presented was one of law, and appellant "[did] not

seek a reweighing of the evidence, rather a reversal for

failure to apply the proper standard of law." Sharp, 178

Mont. at 423-24, 584 P.2d at 1301. That is not the case

here, where certain factual questions decided by the Workers'

Compensation Court are challenged on appeal. To the extent

that factual determinations are questioned, we apply the

Steffes test, and defer to the fact-finder where substantial

evidence exists to support its determinations. As noted in Woody v. Waibel (1976) 276 Ore. 189, 554 P.2d 492, 494, N. 3:

"It is true that there may be questions concerning facts surrounding the arrangements between the parties which would be relevant in determining control. In this sense, the question is one for the trier of fact. However, where there is no dispute as to what the arrangement is, the question of employee or independent contractor status is one of law for the court."

I.

Both Jerry Cain and the Gazette challenge the conclusion of the Workers' Compensation Court that claimant was Cain's employee. The court recognized that employment status can be established in part by the existence of a contract for hire, and that such a contract may be "express or implied, oral or written." Section 39-71-118, MCA. The court concluded that an implied contract for hire existed, stating:

"The fact that nothing was said about pay before services were rendered by the claimant does not negate an implication that Jerry Cain was obligated to pay a reasonable amount for claimant's services performed for and accepted by Jerry Cain. In addition, claimant testified that since she and Jerry Cain were engaged she did not expect wages because she thought they were going to be married. It is the conclusion of this Court that claimant exchanged her delivery services for the use of a vehicle, room and board, and the expectation of financial security from her impending marriage. Under these circumstances a contract of hire may certainly be implied. See 1C Larson, Workmen's Compensation Law, §47.43. . ."

Cain and the Gazette argue that, since Cain and claimant were already engaged, and Cain had paid for food and rent and furnished claimant with a car before she started driving for him, claimant was not actually paid for her work, i.e., there was no increase in benefits or expectations. They also argue that Cain exercised no control over claimant; she was not required to drive. They emphasize that the fine assessed by the State against Cain for his failure to carry Worker's

7

Compensation Insurance for his employees did not include a penalty for his failure to insure claimant.

We are not persuaded by Cain's and the Gazette's arguments, for several reasons. It is true that a "contract for hire," contemplates the worker's being paid; as Larson, Workmen's Compensation Law, Vol. 1C, §47.00(c), p. 8-231, states:

> "Gratuitous servants are not employees, since the element of 'hire' is lacking; but payment may be found in anything of value such as board and lodging, and an agreement to pay is usually implied when the parties have omitted to make an express agreement on payment."

While section 39-71-401(2)(f), MCA, exempts from coverage those persons working for aid or sustenance only unless both employer and insurer elect to cover them, we find other considerations apply in the case at bar. Here, there was no express agreement on payment between claimant and Cain, but claimant worked virtually full-time for Cain doing a portion of the work for which he received $6,470 per month. Her work saved Cain the $15 to $30 per night he would have had to pay someone else to make the run. Claimant expected to marry Cain, and to share his life; her activities helped assure that Cain's livelihood would provide future financial security for her as well. Although this is a very close decision, we find sufficient evidence to support the Workers' Compensation Court's conclusion that, claimant reasonably expected a benefit to flow from her work beyond those benefits she already enjoyed as Cain's fiance.

Appellants' argument -- that claimant received nothing more than she had before she began driving regularly for Cain -- is an argument that cuts both ways. If claimant received board, room, a car, and continued expectation of marriage merely as part of sharing Cain's home with him, she would

8

reasonably expect to be paid considerably _more_ than that for contributing a good share of the work for which Cain brought in almost $6,500 a month.

Indeed, the record indicates that claimant _did_ expect to be paid something for her work. The transcript contains the following statements by claimant:

[on direct]

"Q. Now, did Jerry pay you any money for this work you were doing for him? A. No.

"Q. What was your understanding about getting paid, if you had an understanding? A. I never really had an understanding. I just assumed he would pay me.

" . . .

"Q. [on cross-examination] Okay. Thank you, Debra. So you didn't really assume that he was going to pay you any money, did you? A. When I first started out, I did.

"Q. When did you first start? A. Boy, March or April.

"Q. Well, did that change? That obviously changed then? A. What changed?

"Q. Well the fact that you thought you were going to get money? A. I still thought he might pay me something or something."

The record establishes that claimant furnished valuable driving services to Cain; she reasonably expected payment beyond those benefits which were just a part of her living arrangement. Under these circumstances an implicit agreement to pay may be and properly was inferred in the absence of an express agreement on payment. _Larson_ Vol. 1C, §47.00(c) p. 8-231. We find there is sufficient evidence here to establish a contract for hire under section 39-71-117, and 39-71-118, MCA.

In Montana, the other test to determine whether employee status exists is the "control test," under which the right to control details of the individual's work is decisive. State

9

ex rel. Ferguson v. District Court (1974) 164 Mont. 84, 88, 519 P.2d 151, 153. In _Ferguson_, while recognizing that the test is most frequently used to determine whether or not independent contractor status exists, we noted that it "may be used to also determine who the employer is . . ." 164 Mont. at 88, 519 P.2d at 153. Similarly, here, the test may be used to determine whether employee status existed at the time a claimant was injured. This broad overlap in the test for distinguishing between an employee and an independent contractor, and the test for determining whether employee status exists, is explained by _Larson_, Vol. 1C, §43.20, p. 8-4:

> "The definition of employment status almost always takes the form of distinguishing an employee from an independent contractor. The reason is simple. If one wants to get something done without doing it oneself, there are really only two ways open: to hire an employee to do it, or to contract out the work to an independent entrepreneur. The employee-independent contractor distinction is not an artificial dichotomy invented by legal minds interested in fine distinctions for their own sake. It is a fundamental fact of business life which could not be abolished by the most grandiose legislation."

The four factors to be considered under the "control test" are those articulated in _Sharp_; supra see also _Larson_ Vol. 1C, §44.10 p. 8-19. The factors include: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. Employment status can be established on the strength of any one of the factors, _Sharp_ 178 Mont. at 425, 584 P.2d at 1302.

Appellants make much of evidence that claimant was not required to deliver papers for Cain. While that option has some bearing on the extent of direct control exercised by Cain, it does not alter the fact that when she _did_ deliver, claimant used Cain's vehicle and was obligated to do for Cain the same work the Gazette required of Cain, work which Cain

10

now argues (and we agree -- Issue III) establishes him as an employee of the Gazette. What is more, Cain could have "terminated" claimant at any time, by refusing her the use of his vehicle, hiring somone else to make the run or doing it himself. On the strength of the presence of three out of four factors listed in Sharp as indicating control, we find that the Workers' Compensation Court did not err in its conclusion that claimant was an employee of Jerry Cain.

## II.

The Gazette argues that, even if an employer-employee relationship existed between claimant and Cain, the exemptions under section 39-71-401(2)(b),(c),(d), and (f), MCA, bar recovery under the Workers' Compensation Act. Section 39-71-401(2), MCA, provides, in pertinent part:

> "(2) Unless the employer elects coverage for these employments under this chapter and an insurer allows such an election, the Workers' Compensation Act does not apply to any of the following employments:
>
> (a) . . .
>
> (b) casual employment as defined in 39-71-116(3);
>
> (c) employment of members of an employer's family dwelling in the employer's household;
>
> (d) employment of sole proprietors or working members of a partnership;
>
> (e) . . .
>
> (f) any person performing services in return for aid or sustenance only;
>
> (g) . . ."

We agree with the Workers' Compensation Court that none of these sub-sections applies to claimant.

"Casual employment" is defined in section 39-71-116(3), MCA, as "employment not in the usual course of trade, business, profession or occupation of the employer." When claimant delivered papers for Cain, she was doing work which

11

was, beyond question, in the usual course of Cain's occupation. Cain's only occupation at the time of claimant's accident was to deliver papers for the Gazette. Exemption (b) does not apply.

The Workers' Compensation Court properly rejected exemption (c), noting, "A common law marriage cannot be imputed to their relationship when Jerry Cain was at that time married to another woman and claimant was aware of it." Jerry Cain's prior marriage was not dissolved until eight months after claimant's accident. Exemption (c) does not apply.

The Workers' Compensation Court also properly rejected exemption (d), because "[t]he evidence establishes that claimant was not a sole proprietor, nor was she a member of a partnership. Her name does not appear in the Gazette contracts, the titles to the vehicles, or the checks paid by the Gazette to the contractors. There was no evidence of any kind of a partnership agreement between Jerry Cain and claimant." On review, we find the evidence supports this conclusion. We are not persuaded by the Gazette's claim that claimant and Cain were working together as "a husband and wife team, almost like a partnership." Exemption (d) does not apply.

Finally, we approve the trial court's conclusion that the "aid or sustenance" exemption, (f), refers to "board and room." This conclusion is consistent with that of Norman Grosfield, Montana Workers' Compensation Manual §2.11, p. 4. ("The Division of Workers' Compensation considers this provision as applying to individuals who work for only board and room.") As noted, infra, the evidence supports the trial court's conclusion that claimant worked for financial security in her anticipated marriage to Cain; and claimant's

12

own testimony indicates her reasonable expectation that Cain would pay her something. As claimant points out, she was not just doing housework and cooking in exchange for room and board. She was working virtually full-time outside the home for Cain. Her reasonable expectations exceeded room and board. We hold, therefore, that the "aid and sustenance" exemption does not apply.

## III.

The third argument made by the Gazette is that Jerry Cain was an independent contractor of the Gazette, within the meaning of section 39-71-120, MCA, which provides:

> "An 'independent contractor' is one who renders service in the course of an occupation and:
>
> "(1) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
>
> "(2) is engaged in an independently established trade, occupation, profession, or business."

In Sharp, supra, we considered the difference between an employee and an independent contractor.

> "'The test to determine whether or not an employer-employee relationship exists . . . is the so called control test. Under that test an individual is in the service of another when that other has the right to control the details of the individual's work.' State ex rel. Ferguson v. District Court (1974), 164 Mont. 84, 88, 519 P.2d 151, 153. Respondent has argued an employer must control the details of a performance before the performer is considered an employee. However, the determinative test is based on the right, not just the exercise, of control. Larson, Workmen's Compensation Law, Vol. 1A, §44.10, p. 8-19; Ferguson, supra." Sharp, 178 Mont. at 424, 584 P.2d at 1301.

The four factors used in determining right of control, are as noted, infra: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire.

Jerry Cain received payment every two weeks. Generally, payment by time tends to show employment, while payment by

13

completed project tends to indicate an independent contractor. Payment by piece-work or by commission is consistent with either status. Larson, Vol. 1C, §44.33, p. 8-73.

Section V of the contract provided the Gazette with the right to terminate the contract upon thirty days' notice in writing. This is not particularly significant, since the employer of an independent contractor may require satisfaction in the end result, and may terminate for breach of contract when that requirement is not met. Termination at will or for failure to perform certain details unrelated to the end result would strongly support employee status, Larson, Vol 1C, §44.35, p. 8-116 et seq.

The papers were available at the Gazette loading dock in Billings between 11:00 p.m. and 12:00 a.m. It would generally take around forty-five minutes to load the papers into Cain's truck. Several drops were required on the trip to Sidney, a distance of 300 miles. Jerry Cain testified that Mr. Stubblefield of the Gazette told him to have the papers in Sidney no later than 6:30 a.m. Although Cain was allowed to travel any route he chose, because of the drops and time constraints, it was necessary that he took the shortest route; indeed, Cain testified that he had to drive around 65 mph to arrive at Sidney at 6:30 a.m.

Cain occasionally would receive written orders from the Gazette advising him that drop points had been changed, and he was requested to honor those changes. The Gazette also showed him how to load his truck, putting the bundles for Sidney on first, since they would be the last to come off. The Gazette also furnished Cain with a telephone credit card so he could apprise the Gazette of any problems he might encounter with deliveries.

14

At times Cain was requested to carry vending machines which dispensed Gazette papers to and from Billings for repairs. He was also requested to deliver and delivered fence posts and the tubes used by the Gazette as rural "paper boxes." Cain sometimes was required to carry letters and packages to Gazette district offices along his route. These extra services were not provided for in the contract, nor did Cain receive extra compensation for doing them. Cain was also expected to pick up messages with orders or changes from a room in the Gazette's Billings offices, when he picked up the papers.

The evidence establishes that Cain rendered service as a carrier for the Gazette pursuant to two written contracts. While those contracts very adequately state that Cain was an independent contractor and that the Gazette disclaims having any control, section 39-71-120(1), MCA, provides that the independent contractor must be free from control or direction of the performance of his services "in fact," as well as under his contract. In other words, the mere proof that this contract designates the carrier as an independent contractor is not controlling; the carrier must be independent in fact.

The Workers' Compensation Court concluded that "Jerry Cain's performance of the contract was not free from control or direction from the Gazette either under the contract or in fact." We find substantial evidence to support the findings of the Workers' Compensation Court, as to the Gazette's actual exercise of control over Cain, and on that basis affirm the court's conclusion.

There are two collateral matters here which should be noted. Under the carrier contract both Mike Cain and Jerry Cain may be required to indemnify the Gazette for liability arising out of the contract's performance. If the Cains are

15

found to be independent contractors, their potential liability to the Gazette is supported by section 39-71-405(1), MCA. If Jerry Cain is an employee of the Gazette, the Cains' potential liability must be established by the contract alone. See section 39-71-405(2), MCA. Claimant supports a finding of Cain's employee status "for humanitarian reasons," viz., Mike Cain should not be reduced to poverty, when his participation in the contract was solely for the purpose of helping his son.

Our decision, like that of the Workers' Compensation Court, must turn upon the facts, regardless of the effect upon the parties. Here, the trial court found facts establishing the Gazette's right to control the details of Cain's work. Substantial evidence supports the trial court's conclusion. On that basis, and that basis alone, we must affirm the trial court's conclusion that Jerry Cain was an employee of the Gazette.

The Gazette urges this Court to find independent contractor status as a matter of policy, arguing that our finding employee status would have a devastating statewide effect upon newspapers, whose carriers would automatically become "employees" within the meaning of the Workers' Compensation Act. We do not agree. Our decision today applies only to the relationship between Jerry Cain and the Gazette; we make no sweeping statements concerning newspaper carriers in general. Had the Gazette's dealings with Jerry Cain been free of the trappings of control noted above, independent contractor status would have been found. The contract clearly and effectively establishes the intent to create an independent contractor relationship between the Gazette and its carriers; the facts of the relationship

16

simply do not bear out that intent, as required under section 39-71-120(1), MCA.

We affirm the Workers' Compensation Court on all issues, and remand this case for a determination of reasonable costs and attorney's fees, pursuant to section 39-71-611, MCA.

_____
Justice

We concur:

_____

_____
Justices

_____
Hon. Roy Rodeghiero, District
Judge, sitting in place of Mr.
Justice John C. Sheehy

17

Honorable Peter Rapkoch, District Judge, dissenting.

The Workers' Compensation Court "found" the necessary factual elements of employment, without any basis in the transcript. There being no "findings supported by substantial evidence," (Steffes and Sharp, cited by the majority), this Court should reverse.

On the issue of the relationship between the claimant and Jerry Cain, before there can be an analysis of the nature of that relationship, there must first of all be shown a contractual relationship. The unilateral, unfulfilled, frustrated "assumption" of the claimant that she would be paid "something," or, for that matter, that "she thought they were going to be married," are certainly not sufficient to create a contractual relationship. Nor are they sufficient to constitute "expectations" in the sense that something is realistically promised and likely to be received. As argued by Cain and the Gazette, there was no consideration for the claimant's services. She received nothing additional and she never thought of anything additional. That is my clear perception of the evidence.

An attorney would not advise a client in advance to go out and make a contract on that basis; nor, it is submitted, would he advise a client to sue for the breach of such a "contract."

According to the evidence, at the relevant times there were none of the elements of an employment contract, either in fact or in the minds of the people involved, until it was seen that these elements were necessary for the case. They were then manufactured out of whole cloth by other, fertile, minds. The Workers' Compensation Court appears to have injected its own ideas of what it would have done in the circumstances of this case, after knowing, as we do, what truly tragic thing happened to the claimant. The majority seems to acquiesce in that process. I cannot.

I further question the majority's reliance upon Norman Grosfield, Montana Workers' Compensation Manual, Sec. 2.11, p.4,

that "The division of Workers' Compensation considers this provision (the "aid and sustenance" exemption of Section 39-71-402(2), MCA) as applying to individuals who work for only room and board." That begs the question. However, I do believe from the evidence that the claimant worked for "aid and sustenance" at most. There is no evidence that she worked "for financial security in her anticipated marriage."

The relationship between the Gazette and Jerry Cain was shown by the evidence to be one between parties to an independent contract. Jerry Cain was not an employee of the Gazette.

The basic test applied by the majority is that of control. As the majority correctly indicates, in applying this test, one must be careful to distinguish between the purpose of the contract and the right to, or the actual, control of the manner or details of performance of that contract. Every contract, independent, employment or otherwise, has a purpose. The purpose of the instant contract was to get the newspapers to their appointed places at the appointed times and in suitable condition.

All of the factors stated by Mr. Cain and others as points of "control" by the Gazette over Mr. Cain are addressed purely to the meeting of the requirements, the purpose, of the contract. The fact that the distance and time requirements are demanding and restrictive does not militate against an independent contract. The right to control, which destroys an independent contract and indicates one of employment, is the right to determine which of two or more fitting ways of achieving the purpose of the contract will be followed. Because of the nature of the contract here, there was no room for, or any right to, control.

The future looks bleak for independent contracts.

I therefore respectfully disagree with the majority in their opinion that the claimant was an employee of Jerry Cain and that Jerry Cain was an employee of Lee Enterprises.

Honorable Peter Rapkoch sitting in place of Mr. Chief Justice Frank I Haswell.

-19-

We concur in the foregoing dissent.

_____
Justice

_____
Justice